#25017

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANUTA WOZNIAK, Individually and as )
Special Administrator of the ESTATE of )
JAN WOZNIAK, deceased )
　 )　　Case No:
　　　　　　Plaintiff, )
　 )
vs. )
　 )
WYNDHAM HOTELS AND RESORTS, LLC )
a foreign corporation )
　　　　　　Defendant. )

## DEFENDANT, WYNDHAM HOTELS AND RESORTS, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS*

Defendant, WYNDHAM HOTELS AND RESORTS, LLC (Hereinafter "WHR"), by and through its attorneys, PRETZEL & STOUFFER, CHARTERED, hereby moves to dismiss Plaintiff, Danuta Wozniak's Complaint at Law pursuant to *Forum Non Conveniens*. In support of its motion, defendant states as follows.

1.　　On or about January 25, 2008, plaintiff, Danuta Wozniak, Individually and as Special Administrator of the Estate of Jan Wozniak, filed her initial Complaint alleging premises liability and damages in Wrongful Death, Survival, and Loss of Consortium claims.

2.　　Plaintiff alleges that the decedent, Jan Wozniak suffered a fall which occurred in the State of Quintana Roo, City of Cozumel, Mexico. Thereafter, it is alleged that the decedent expired as a result of his injuries in Cozumel, Quintana Roo, Mexico on October 16, 2007. None of the operative facts giving rise to plaintiff's allegations occurred within Illinois.

3.      The owner of the hotel and premises at which the plaintiff allegedly fell, is Islander Properties S.A. de C.V., a Mexican entity which has not been named as a defendant despite the fact that this action sounds in premises liability.

4.      The defendant, WHR, was not the owners of the hotel in question. Further, WHR is a non-Illinois corporation. Rather, it is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New Jersey.

5.      The plaintiff's Complaint should be dismissed in favor of a venue in Mexico because pursuant to the doctrine of forum non conveniens the interests of justice and the convenience of the parties dictate such a dismissal.

6.      WHR hereby moves for dismissal for the reasons set forth above. These reasons are set forth in detail in a Memorandum of Law which is filed contemporaneously with this motion and is incorporated herein by reference.

WHEREFORE, for each of the foregoing reasons, as well as those set forth in WHR's separately filed Memorandum of Law, the Court should dismiss plaintiff's Complaint pursuant to forum non conveniens.

Respectfully submitted,

PRETZEL & STOUFFER, CHARTERED

By:_____/s/_____
           Amy J. Thompson

Patrick F. Healy
Amy J. Thompson
Pretzel & Stouffer, Chartered
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312-346-1973

481-063641(391)                                                          #25017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DANUTA WOZNIAK, Individually and as | ) | |
| Special Administrator of the ESTATE of | ) | |
| JAN WOZNIAK, deceased | ) | |
| | ) | **Civil Action No: 08 CV 1361** |
| Plaintiff, | ) | **Judge Lefkow** |
| | ) | **Magistrate Judge Denlow** |
| vs. | ) | |
| | ) | |
| WYNDHAM HOTELS AND RESORTS, LLC | ) | |
| a foreign corporation | ) | |
| Defendant. | ) | |

## DEFENDANT, WYNDHAM HOTELS AND RESORTS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### INTRODUCTION

Plaintiff, Danuta Wozniak, Individually and as Special Administrator of the Estate of Jan Wozniak, ("Wozniak") has filed a three-count Complaint against defendant, Wyndham Hotels and Resorts, LLC ("WHR"). The substance of the claim against WHR is one of premises liability with damages alleged by Wozniak under Illinois Survival Act (Count I), the Illinois Wrongful Death Act (Count II), and Loss of Consortium (Count III). Specifically, Wozniak claims that defendant was the actual or apparent agent of the premises owner, and as such, WHR was responsible for the operation and maintenance of the property in question.

In essence, this case represents the quintessential premises liability case with one exception. In the instant matter, plaintiff attempts to cleverly fashion her Complaint against WHR as an apparent agent of the premises, while asking the Court to overlook the glaring fact that she has failed

-1-

to sue the known owner of the premises. As more fully set forth below, this case should be dismissed in favor of Mexico and for the convenience of the parties because the owner of the premises is located there, and cannot be made a party to the instant action. The interests of justice dictate that the owner of the premises should have primary liability for causes of action sounding in premises liability.

Moreover, each of the factors to be considered under a *forum non conveniens* analysis favor the dismissal of this case. First, Wozniak has an available and adequate forum in Mexico. Also, in Mexico, there exists the location of the premises in question, the site of the accident alleged, and the place of Decedent's death. Moreover, Mexico is the site of most, if not all, of the evidence pertinent to this cause. Because of these significant contacts with Mexico, Mexican law applies to this matter; however, in Illinois, the premises owner, and other potential third party defendants, cannot be joined to this case. Thus, both the public and private interest factors of *forum non conveniens* weigh heavily in favor of a dismissal of this action.

### FACTUAL BACKGROUND

Plaintiff alleges that the decedent, Jan Wozniak, died on October 16, 2007 as a result of a fall which took place on the premises of the Wyndham CZM Resort & Spa Caribbean Rm, located in Cozumel, Quintana Roo, Mexico. (Cmplt. ¶ 3) Wozniak does not, nor could she, allege that WHR was the owner of the premises in question. In fact, according to Wozniak's Complaint, the owner of the premises in question was Islander Properties S.A. de C.V.("Islander Properties") Cozumel, Mexico. (Cmplt. ¶ 6). The Plaintiff gratuitously alleges that the sole defendant, WHR, was the actual or apparent agent of the owner, Islander Properties, and further alleges damages under the Survival Act, the Wrongful Death Act, and in a loss of consortium claim.

WHR is a Delaware corporation with its principal place of business in New Jersey. (*See,* Affidavit of Valerie Capers Workman, ¶ 2, attached hereto as Exhibit 1). WHR has no ownership interest in the Islander Properties hotel where Plaintiff-Decedent's accident occurred, nor has it at any time operated, managed, controlled or occupied those premises. (Id. ¶3-4) Specifically, no WHR employees work at the hotel, and WHR has never been involved in day-to-day operations, direction, or management of the Islander Properties hotel. (Id. ¶5-6). Rather, as conceded in plaintiff's Complaint, the hotel in question is independently owned by Islander Properties. (Id. ¶ 7;Cmplt. ¶ 6)

Any individuals involved in the operation, management, occupation, and control of the hotel where the accident occurred, are located in Mexico. Moreover, the hotel owner, Islander Properties is a Mexican entity, operating under the laws of that country. (Cmplt. ¶6 ) As a foreign corporation, Islander Properties is not subject to jurisdiction in Illinois. Thus, although one would surely expect Islander Properties, as the owner of the premises, to be joined to this action as a logical party in a premises case, such an action could only be brought in Mexico.

In addition to the above stated considerations, all personnel who have investigated this accident, including those with the coroner's office, are located in Mexico. Any medical care received by the decedent prior to his death on October 17, 2007 occurred in Mexico. In fact, most, if not all of the physical evidence and witnesses to this case are located in Mexico.

Thus, when considering this case pursuant to each factor encompassed under a *forum non conveniens* analysis, the unquestionable conclusion is that this matter should be dismissed in favor of a refiling in Mexico.

## LAW & ARGUMENT

The doctrine of *forum non conveniens* allows a trial court to "dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir.2005) (*quoting Kamel v. Hill-Rom Co.*, Inc., 108 F.3d 799, 802 (7th Cir.1997)). The doctrine further empowers a federal court to decline to exercise jurisdiction where the convenience of the parties, the court, and the interests of justice indicate that the case should be heard in another forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 247-49, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The first step in a *forum non conveniens* analysis is to determine whether there is an alternative forum to hear the case. *Piper*, 454 U.S. at 254 n. 22.

## A.    PLAINTIFF HAS AN AVAILABLE AND ADEQUATE FORUM IN MEXICO

As a threshold matter, Mexico provides an available and adequate forum for plaintiff's claims brought in this lawsuit. In the instant action, there can be no doubt that Mexico is an available forum because WHR is willing to submit to the jurisdiction of the Mexican courts for this case. (Ex. 1, ¶ 8) It further stipulates to waive any statute of limitation defense to Wozniak's claims should the case be dismissed in favor of a Mexican venue[1]. (Id. ¶ 9) Thus, defendant's submission to the jurisdiction of an alternative forum renders that forum available for purposes of *forum non conveniens* analysis. *See e.g., Macedo v. Boeing,* 693 F.2d 683, 687-88 (7th Cir.1982), and *Gonzales*

---

[1].    WHR agrees, via the Affidavit of Ms. Capers Workman to accept service in actions brought by Plaintiff in a court of Mexico so long as Plaintiff files such action within 120 days of this Court's order dismissing this action, or, in the event of appeal, within 120 days of any order by the Seventh Circuit Court of Appeals or the United States Supreme Court that has the effect of making the dismissal order final.

-4-

*v. Chrysler Corp.,* 301 F.3d 377, 380 n. 3 (5th Cir.2002) ("It is undisputed that Mexico is an amenable forum because the defendants have agreed to submit to the jurisdiction of the Mexican courts.").

Moreover, Mexico represents an adequate forum for Wozniak's claims. It is well-settled law that "a court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress. *Tkachyov v. Levin, 1999 WL 782070*7* (N.D. Ill.)(citing *Ceramic Corp. of America v. Inka Maritime Corp. Inc.,* 1 F.3d 947, 949 (9th Cir.1993)) Ordinarily, a foreign forum is adequate when it provides the plaintiff with some potential avenue for redress. A forum is "adequate" when "the parties will not be deprived of all remedies or treated unfairly," even though they may not enjoy the same benefits as they might receive in an American court. *Kamel v. Hill-Rom,* 108 F.3d 799, 803; *(citing Piper,* 454 U.S. at 255); *Gonzales v. Chrysler Corp.,* 301 F.3d 377, 380 (2002).

In support of a determination in favor of the adequacy of Mexico as a forum for actions such as this one in tort, WHR submits the attached Affidavit of Emilio Gonzalez De Castilla Del Valle, an Attorney licensed to practice law in Mexico. (*See*, Affidavit of Emilio Gonzalez De Castilla Del Valle with attachments attached hereto as Group Exhibit 2). Mr. Gonzalez has reviewed the pleadings and has reached the opinion that Woziniak has a remedy in wrongful death under Mexican law. More specifically, Attorney Gonzaelz has set forth the remedies available to Wozniak under both the national laws of Mexico and those applicable under the local laws of Quintana Roo. (Id. P. 5¶ i-iv). As such, it is clear that Mexico provides an adequate remedy to address the claims brought forth by Wozniak in this lawsuit.

**B.    THE INSTANT CASE SHOULD BE DISMISSED PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS* BECAUSE THE FACTORS WEIGH STRONGLY IN FAVOR OF MEXICO AS THE MOST CONVENIENT VENUE**

The balancing test to be applied in cases involving *forum non conveniens* motions was set forth in the Supreme Court case of *Gulf Oil Corp. V. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 (1947). The test weighs both private and public factors in making a determination. First, the private interests to be considered include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; the possibility of viewing the premises; and all other practical problems that make a trial of a case easy, efficient and economical. *Id.* at 508, 67 S.Ct. at 843. Next, the public factors bearing on the question include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*, at 509, 67 S.Ct., at 843

**1.    The Private Interest Factors Strongly Favor Adjudication Of This Matter By A Mexican Court**

As a threshold matter, the easiest access to sources of proof lies in Mexico. Pursuant to Wozniak's Complaint, plaintiff's decedent fell at a hotel in Mexico. As a result of this occurrence at the Mexican resort, documentation that will be highly relevant and pertinent to this lawsuit including investigative documents, medical records and death certifications, was generated. Thus, most of the relevant documents in this case are either in the possession of: (i) Islander Properties, the owner of the premises; (ii) local authorities in Cozumel who investigated the accident and the

death; or (iii) the physicians and healthcare institutions who treated Wozniak prior to his death.  All of these individuals and/or entities are located in Mexico; not Illinois.  The observations, notes, reports and conclusions of those investigators will be of paramount importance to the defense in any premises liability suit.  In addition, housekeeping services personnel from the hotel will likely need to be witnesses regarding the regular maintenance and upkeep of the premises.  The operating entity will be needed to testify to the daily operations of the hotel, including those specific to the date in question.  All of these sources of proof are located in Mexico.

The analysis continues to favor Mexico when looking to the witnesses who will need to be called at the trial of this matter.  The vast majority of witnesses reside outside of the jurisdiction of Illinois courts.  Further, WHR has no reason to believe that any of these witnesses would be either subject to service of subpoena by an Illinois court, or that they would willingly travel to Illinois for the trial of this matter.  Even those witnesses willing to travel to Illinois for trial would be required to travel a great distance at a substantial cost.  For this reason, a trial in Mexico would proceed more efficiently and with less costs to the parties involved than a trial in Illinois. As plaintiff's complaint evidences, Wozniak is willing and able to travel to Mexico.  Even if plaintiff is inconvenienced by attendance at a trial in Mexico, it is far less expensive and vastly more feasible to obtain her attendance in Mexico rather than to attain the attendance of several independent Mexican witnesses at a trial in Illinois.

Another example of the increase in costs if this case were tried in Illinois is that evidence created in Mexico, including investigative materials, medical records and governmental documents will need to be translated from Spanish into English before a trial could proceed in Illinois. To the extent that such documentation is written in Spanish, translation to English would  be required for

trial in Illinois. To litigate this case in Illinois would also foreclose any possible visit to view the scene of the accident including the hotel stairs and hallway where the decedent allegedly fell. Such a visit may be helpful and even necessary to the jury's understanding of the accident.    More importantly, however, is the fact that the most obvious potentially responsible entity, the owner of the premises where the Plaintiff's accident occurred, is not amenable to the jurisdiction of the Northern District of Illinois nor of the United States of America. If there is liability for Wozniak's damages in this case, it would constitute a great injustice if the premise owner were not made to answer for its acts or omissions in that regard. Only a Mexican court has jurisdiction over each of the pertinent parties thus allowing for a full and fair adjudication of the issues on the merits of the case. Therefore, a complete analysis of the private interest factors strongly favor the dismissal of the present case in favor of a re-filing of this action in Mexico.

## C.    THE PUBLIC INTEREST FACTORS WEIGH HEAVILY IN FAVOR OF DISMISSAL

Pursuant to an analysis of choice of laws, the law of Mexico will be applied to this case. In the case, *Townsend v. Sears Roebuck and Company,* 227 Ill. 2d 147,879 N.E.2d 893, (2007) the Illinois Supreme Court affirmed Illinois' adoption of Section 146 of the Second Restatement of Conflict of Laws as the choice of law analysis to be performed. Section 146 provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in section 6 to the occurrence, and the parties, in which event the local law of the other state will be applied.

*Townsend,* at 227 Ill. 2d 147, 879 N.E.2d 893, 904, citing Restatement (Second) of Conflict of Laws §146 at 430 (1971). The Supreme Court further stressed the location where the tort occurred as

-8-

being the utmost factor for consideration when applying the most significant relationship test. Specifically, the Court concluded that "In the absence of unusual circumstances, the highest scorer on the 'most significant relationship' test is the place where the tort occurred. For that is the place that has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law." *Townsend*, at 227 Ill. 2d 147, 879 N.E.2d 893, 904, 316 Ill. Dec. 505, 516, citing *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844-845 (7th Cir.1999).

In the instant matter, Mexico is where the accident giving rise to this lawsuit occurred. The accident involves claimed inadequacies and insufficiencies in a Mexican hotel which employed Mexican citizens, and was built and maintained in accordance, presumably, with Mexican regulations. As such, there can be no question under the analysis set forth by the Illinois Supreme Court that Mexico has the most significant relationship with this claim, and, under Illinois law, Mexican law must apply.

In addition, the citizens of Mexico have a strong interest in deciding this localized controversy. The local citizens of Cozumel have an interest in determining the cause of the accident, particularly where it may impact local standards and regulations. It is the community that formulates the law applicable to the premises in question, and if those laws, regulations or standards which reflect the values of the community are not able to protect persons from injury, those citizens have an interest in correcting such flaws. However, if the laws, regulations, and standards did provide adequate protection to the plaintiff, the local citizens have an interest in being vindicated from the possible shadow of negligence.

Judicial economy also favors a Mexican venue for this case.  Not only is a Mexican Court more familiar with the laws governing Mexico, but it would also not require the translation of these laws from Spanish into English.  This burden is evidenced by the attachments to Exhibit 2 which set forth the various applicable statutes at issue in this case, all of which are written in Spanish.

Adjudication of this matter in Mexico would also serve the interests of justice.  The relationship between the community where the court sits and plaintiff's claims in this case are far more extensive in Mexico than Illinois. The interests of justice are best served when "the action is litigated in the forum that is closer to the action." *Carillo v. Darden*, 992 F.Supp. 1024, 1026 (N.D. Ill. 1998).  Here, the community of Cozumel, Mexico is undoubtedly closer to the alleged activity that provides the basis for Wozniak's claims against the defendant than the Northern District of Illinois. The interests of justice also favors the dismissal of this action, and its re-filing in Mexico because WHR has no access to the documents and sources of proof, no ability to subpoena any Mexican witnesses for deposition, and more importantly, no ability to add as a party, the owner of the hotel where Plaintiff-decedent's accident occurred.  The United States has no jurisdiction over the owner of the hotel where the accident occurred.  As a result, this Defendant, WHR, has no ability to add said hotel owner as a Third-Party Defendant, in the United States of America.  WHR could, however, include the hotel owner as a party in a Mexican court, which would promote a full and fair adjudication of this action, on the merits.

## CONCLUSION

Thus it is clear that the convenience of the parties and the witnesses strongly favor a Mexican forum.  Mexico provides an available and adequate forum for the resolution of all of plaintiff's claims.  Moreover, Mexican law will apply to this controversy regardless of the location of the trial.

Finally, upon weighing the private and public factors considered under an analysis of *forum non conveniens,* it is clear that Mexico is the prevailing jurisdiction. Therefore, for the reasons stated herein, and in its Motion to Dismiss, a dismissal of this case is warranted.

WHEREFORE, the Defendant, WYNDHAM HOTELS AND RESORTS, LLC, by and through its attorneys, PRETZEL & STOUFFER, CHARTERED, prays that this cause be dismissed, for *forum non conveniens*.

Respectfully submitted,

Wyndham Hotels And Resorts, LLC

By:＿＿＿＿/s/＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　Amy J. Thompson

Patrick F. Healy
Pretzel & Stouffer, Chartered
One South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312-346-1973

-11-

481-063641(391)                                                    #25017

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DANUTA WOZNIAK, Individually and as Special Administrator of the ESTATE of JAN WOZNIAK, deceased<br><br>                    Plaintiff,<br><br>vs.<br><br>WYNDHAM HOTELS AND RESORTS, LLC a foreign corporation<br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No: 08 CV 1361
Judge Lefkow
Magistrate Judge Denlow

## AFFIDAVIT

I, Valerie Capers Workman, having first been duly sworn under oath, do depose and state as follows:

1.      I am Vice-President of Franchise Administration for Wyndham Hotels and Resorts, LLC, (hereinafter referenced as "WHR") and have personal knowledge of the following:

2.      WHR is a Delaware corporation with its principal place of business in New Jersey.

3.      WHR has no ownership interest in the Islander Properties hotel in Cozumel, Mexico, described in Plaintiff's Complaint, and alleged to be the location of Plaintiff-Decedent's accident, and WHR had no ownership interest on October 16, 2007, the date of Plaintiff-Decedent's alleged accident.

4.      At no time on or prior to October 16, 2007, did WHR operate, manage, control, own or otherwise occupy the Islander Properties Hotel in Cozumel, Mexico, described in Plaintiff's Complaint.

5.      At no time on or prior to October 16, 2007, did employees of WHR work at the Islander Properties Hotel in Cozumel, Mexico.

6.      At no time did WHR have any involvement in the day-to-day operations, direction or management of the Islander Properties Hotel in Cozumel, Mexico, described in Plaintiff's Complaint.



7.     The Islander Properties Hotel in Cozumel, Mexico, described in Plaintiff's Complaint is independently owned by Islander Properties, and is operated as a franchisee of WHR.

8.     That WHR agrees and stipulates to the jurisdiction of a Mexico court in the event that this cause is dismissed for forum non conveniens.

9.     That WHR agrees to accept service in actions brought by Plaintiff in a court of Mexico so long as Plaintiff files such action within 120 days of this Court's order dismissing this action, or, in the event of appeal, within 120 days of any order by the Seventh Circuit Court of Appeals or the United States Supreme Court that has the effect of making the dismissal order final.

10.     That WHR agrees to satisfy a final judgment rendered by a court of Mexico.

11.     That WHR agrees to exclude from the calculation of statute of limitations time periods, the period of time Plaintiff's claim has been pending in this action, and, in addition, any period of time during appeal from the dismissal order prior to an order of the Seventh Circuit Court of Appeals or the United States Supreme Court that has the effect of making the dismissal order final, as well as the 120-day period provided for in Number 9, above.

12.     That WHR agrees to advise the Mexican court that they have no objection to the admissibility of depositions taken in the United States or other materials obtained in discovery in the United States, simply on the basis that the depositions or other materials were obtained outside Mexico.

13.     The facts contained in this affidavit are true and correct to the best of my knowledge.

Respectfully submitted

Valerie Capers Workman,
Vice-President Franchise Administration
Wyndham Hotels and Resorts, LLC

SUBSCRIBED and SWORN to
before me this ___10___ Day of
March, 2008.

_____
NOTARY PUBLIC

Jennifer Burns
A NOTARY PUBLIC OF NEW JERSEY
My Commission Expires March 26, 2011

# GONZALEZ DE CASTILLA

Emilio González de Castilla Sr.
Fernán González de Castilla
Emilio González de Castilla Jr.
Alejandro Rafael Avila Díaz

**ABOGADOS**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DANUTA WOZNIAK, individually and as
Special Administrator of the Estate of
JAN WOZNIAK, deceased

§       CASE No: 08 L 896

          Plaintiffs,    §

§

vs.                 §

§

WYNDHAM HOTELS AND RESORTS,
LLC a foreign corporation

§

          Defendants.    §

---

### DECLARATION OF LICENCIADO
### EMILIO GONZÁLEZ DE CASTILLA DEL VALLE

México, D.F. March 27, 2008.

**I EMILIO GONZÁLEZ DE CASTILLA DEL VALLE** have been requested to issue an opinion regarding Mexican law on several topics that I will refer to hereinafter. In order to render this opinion I have reviewed two documents (i) Plaintiffs' Complaint at Law including Motion to Appoint Special Administrator and (ii) Defendants' Notice of Removal. My resume is in English, is enclosed herewith as **Exhibit 1**, and shows my qualifications to give this opinion.

In addition to the qualifications listed in my resume I state that I am a citizen of Mexico and I am over the age of 18.

My understanding is that this opinion will be submitted to the United States Court for the Northern District of Illinois in the case above mentioned.

The facts of the case as alleged by Plaintiff are: Jan and Danuta Wozniak chose to book their vacations in Cozumel, Quintana Roo, Mexico from October 10 through October 17, 2007. They booked their vacations through Apple Vacations. That the Hotel where they stayed held itself to be a Wyndham owned and operated hotel. That at the premises



Rio Marne No. 17, 5° piso
Col. Cuauhtémoc
06500 México, D.F.
Tels. 535•9469  546•6551
566•1091  535•6031
Fax: 546•3714

# GONZALEZ DE CASTILLA

2                                    ABOGADOS

defendants had actual or constructive notice of the slippery conditions in the hotel and of the low stairway walls that bordered the stairs. That on or about October 16, 2007 Jan Wozniak was walking into the lobby of the premises from the pool patio area when he slipped and fell over the side of a stairwell which was located in the lobby. He was seriously injured and died later that day from his injuries incurred in the fall.

## SUBSTANTIVE REMEDY

**1.- Whether, on the facts of this case, a remedy or remedies is or are available to the Plaintiffs under Mexican law.**

If the individual Plaintiffs do reside abroad, they could in my opinion directly file a civil liability claim before the competent courts in Mexico.

The Quintana Roo Civil Code, as applicable to the extent that the facts occurred Cozumel, Quintana Roo, states that such Code applies to foreign nationals domiciled or transitorily in the State. (Article 2 of Quintana Roo Civil Code. **Exhibit 2).**

Based upon the above, it is my opinion that a legal remedy for contractual or non contractual responsibility, including tort, is in fact available to foreign nationals, residents or non residents in the Quintana Roo State, and such remedy is to be found in the Civil Code of such State. This in light of the fact that, to my knowledge, there is no conflict of law rule or international treaty provision which provides for the application of a different substantive law. However, such remedies are available only to the spouse or legitimate heirs as explained below.

**2.- If a remedy or remedies is or are available under Mexican law, what elements of damages or compensation are covered by the scope of that remedy.**

A civil remedy is available in accordance with the Quintana Roo Civil Code for wrongful death actions and there are two kinds of damages that could be claimed by the spouse or the legitimate heirs: (i) economic compensation or (material) indemnification and (ii) indemnification derived from the so called Moral Damages.

If from the facts a conclusion is reached that Defendants are responsible for the wrongful death of Mr. Wozniak, such responsible party must indemnify the person that was economically dependent on the victim or with whom he lived with (spouse) and, absent the above, to the legitimate heirs. (Article 129 of the Code)

Article 126 and 127 of the Quintana Roo Civil Code states that the amount of indemnification shall be determined based upon the following elements: (a) any and all medical expenses and funeral expenses shall be reimbursed to the persons that paid such amounts and (b) the equivalent of eight hundred days of the victim's known wage at the time of death, with a cap or limit to four times the highest minimum daily wage in the State. If the victim has variable income or had no income the indemnification would be

# GONZALEZ DE CASTILLA

3
### ABOGADOS

the equivalent of eight hundred days of the minimum daily wage in the economic zone payable to the spouse or to the legitimate heirs.

In addition, Plaintiff is able to request an indemnity for the so called "Moral Damages". (Article 131 and 132 of the Quintana Roo Code). Plaintiffs must allege they have suffered in their sentiments, affections and private life. Such cause of action is not an action derived from Mr. Wozniak alleged pain, suffering and emotional distress before he died but a direct action of the surviving spouse.

The amount of indemnification must be quantified in accordance with the Mexican Federal Labor Law, and this is as follows: (a) the victim's known wages or else if there are none, the minimum daily wage of the place where the accident occurred, (b) extended by the number of days provided for by the Mexican Federal Labor law to the specific incapacity or death, (c) in case of death the action corresponds to the spouse or legitimate heirs, and (d) the court has a discretionary power to increase such indemnification up to an additional 80% in accordance with the circumstances of the case.

Article 484, 500 and 502 of the Labor law states that in case of death, the number of days applicable to such incapacity by death is 790 days; that is to say, two month for funeral expenses plus 730 days as compensation. **(Exhibit 3.)** The daily wage is the one in force at the time of death.

Based upon the above, it is my opinion that Plaintiffs could have a cause of action under Mexican Law based upon the indemnification provided for a wrongful death action, and on Moral Damages grounds.

### JURISDICTION

**1.- Explanation of the concepts of jurisdiction *(jurisdicción)* and competence *(competencia)* in the Mexican legal system.**

The concept of "jurisdiction" in Mexico is understood as the State's sovereign authority to decide legal disputes by means of final binding and enforceable judgments rendered by courts duly appointed. Such jurisdiction is divided in two classes: (i) Federal and (ii) State.

In Mexico the concept of "competence" refers to certain delimitations provided for by applicable procedural law, as to how courts may exercise jurisdiction.

Therefore, all courts have jurisdiction but not all courts have competence.

The rules to determine competence are based on (a) external elements that we identify as "objective", and (b) internal elements (those related to the persons involved in the specific case) that we identify as "subjective".

# GONZALEZ DE CASTILLA

4                                    **ABOGADOS**

(a) With regard to the "objective" delimitation of jurisdiction, competence is therefore determined based on (i) territory *(territorio)*, (ii) substantive applicable law *(materia)*, (iii) amount in dispute *(cuantía)*, and (iv) instance *(grado)*.

(a)(i). - Competence based on territory refers to the authority of the court to exercise its jurisdiction within a specific geographic area determined by the law.

(a)(ii).- Competence based on substantive applicable law refers to the authority of the court to exercise its jurisdiction in the different areas of substantive law, such as Family Law, Commercial Law, Real Estate Law, Leasing Law, Criminal Law, etc.

(a)(iii). - As regards to competence based on the amount in dispute, it refers to the authority of the court to exercise its jurisdiction depending on the economic worth of the dispute submitted to it.

(a)(iv).- Finally, competence based on instance refers to the authority of the court to exercise its jurisdiction in first instance, as court of origin, or in second instance, as a superior court to review the decisions made by the court of origin.

(b)    In connection with the "subjective" delimitation of jurisdiction, it refers to personal circumstances  ---of the court members and of the parties and their legal counsel---  by which the absolute independence of the judge or court officers may be questioned.

In the presence of any such personal element, the judge or the court officer shall excuse themselves and should not exercise jurisdiction in the specific controversy; otherwise, the interested party may challenge their role as judge or officer and seek the removal of the case to another court.

The general procedural rule to determine the territorial competence of a court on personal actions claims derived from civil responsibility, is that of the legal domicile of Defendant. (Article 157 Section IV of the Civil Procedure Code in the State of Quintana Roo. **Exhibit 4**). This general rule applies, provided there is no prior agreement of the parties to submit the case to a different court with a point of contact or else, if Plaintiff submits the case to a different court and Defendant submits its response (or counterclaim, if necessary) to such court without challenging its competence. This in light of the fact that in Mexico competence  ---and therefore jurisdiction---  by territory can be waived by the parties and it can be extended by such waiver to a different court in any personal action contractual or non contractual. (Articles 150, 153 and 154 Sections I and II of the Civil Procedure Code of Quintana Roo)

In personal actions, including non contractual civil responsibility, as mentioned above and based upon Article 121 Section III of the Constitution, waiver and extension of competence based on territory can take place by (i) agreement of the parties prior to submitting the controversy to the courts, through a waiver-submission clause, or (ii) by a unilateral decision of each of the parties; Plaintiff by submitting its lawsuit before the court it deems competent, and Defendant by answering such lawsuit (or, in its case, filing

# GONZALEZ DE CASTILLA

5                                    ABOGADOS

a counterclaim), before such court without challenging the competence (by territory) through the procedural mechanisms designed for such purposes. **Exhibit 5.**

Should the parties extend ---accept--- the jurisdiction (competence by territory) of a court, they would be bound to continue with the process in accordance with the procedural rules applicable to the forum ("lex fori") and will also be bound by the orders and resolutions issued by such court.

Should defendant reject the competence of the judge based on territory -----or by any other cause----- it must challenge such competence through the applicable mechanisms available under procedural law for such purposes. If successful, the general rule designating the legal domicile of defendant ---in personal actions--- should then prevail.

A submission agreement is a document by which the parties agree to submit a legal dispute among them, preset or future, to a specific court with a point of contact (for example, the legal domicile of any of the parties, the place to perform the obligation, the place where the subject matter of the dispute is located, the place where the facts occurred) with the case. This agreement is supported by Article 121 Section III second paragraph of the Federal Constitution, Federal Statutes (Article 23 of the Federal Code of Civil Procedure and Article 1093 and 1094 of the Commercial Code) and Article 150, 153 and 154 Sections I and II of the Civil Procedure Code of Quintana Roo do accept and regulate such express written submission clause.

### Opinions

(i)     Foreign nationals with residence abroad do have a remedy in Quintana Roo in wrongful death actions.

(ii)    The remedy available is the payment of an indemnification in accordance with Articles 2, 87, 126, 127, 128, 131, 132 of the Quintana Roo Civil Code which refers to the Mexican Labor Law Statute to quantify certain indemnification amounts.

(iii)   Such action belongs to the spouse or legitimate heirs.

(iv)    In addition to such (material) indemnification payable to the spouse or legitimate heirs, a person is able to claim the so called Moral Damages provided there is a non contractual, including tort, responsibility. The Court may award as compensation for Moral Damages up to a additional 80% depending on the circumstances of the case.

(v)     Mexican Courts are competent to address a case involving a foreign national with domicile abroad if (a) there is a written agreement of the Parties to submit to such court, or (b) if there is a tacit submission to such court by (b.1) filing a complaint before such court, or by (b.2) responding without challenging the competence of the court, or (c ) in contractual responsibility, absent a domicile, the Court is located in the place where the contract was to be performed, and finally (d) if the court is located

# GONZALEZ DE CASTILLA

6                 **ABOGADOS**

in the legal domicile of defendant; or one of the codefendants if they are two or more.

Executed on Date: March 27, 2008.

_____

**EMILIO GONZÁLEZ DE CASTILLA DEL VALLE**

## RESUME OF EMILIO GONZALEZ DE CASTILLA DEL VALLE.

**BIRTH DATE:**  Born in Mexico City on July twenty-eighth, nineteen fifty-three.

**INITIAL STUDIES:** Instituto Patria,  Linton Hall Military Academy, Washington, D.C. and Colegio Vista Hermosa.

**UNIVERSITY:**  Escuela Libre de Derecho school of Law 1973-1978 class. Final paper "Simulation of legal Contracts"

**LAW CERTIFICATE:** His professional license is N° 574985, issued on August 23, 1979, by the General Bureau of Professions, under the Secretariat of Public Education.

**POSTGRADUATE:** Masters Program at Harvard Law University, United States of America, from July 1980 to July 1981. The thesis presented dealt with foreign investment in the form of a trust, in the so-called prohibited Mexican zones.

**PROFESSIONAL PRACTICE:** From 1974 to 1977, he worked in the legal office of Hardin, Hess, Santos Galindo and Hanhausen. From 1977 through 1980 he worked with Gonzalez de Castilla Abogados.

Upon completing his Masters program at Harvard, he moved to New York and worked in the legal office of Reid & Priest, (currently Thelen, Reid & Priest LLP), from July 1981 to July 1982.

In 1982 he returned to Mexico City, re-entering the firm currently called "Gonzalez de Castilla, Abogados, S.C.", as a partner, where he works currently. His main practice is Civil and Commercial matters, including Insurance Law. Civil and Commercial litigation as well as Alternative Disputes Resolutions focused on Arbitration; National and International.

**ACCADEMIC ACTIVITIES:** From 1982-through 1986 he taught Civil Obligations Seminar. In mid-1986 he was appointed regular professor of the subject, "Civil Obligations", at the Escuela Libre de Derecho both in the Graduate and the Post graduate program. He was invited in 1994 as visiting professor at the University of

Florida, Gainesville, Fl. He has also lectured at the Universidad Bonaterra in Aguascalientes, Ags. 1996, 1997, 2000, 2001, 2005.

**SEMINARS AND ARTICLES**: In 1988 he was designated moderator of the conferences organized by the Escuela Libre de Derecho concerning marriage under the joint property ownership system. During the same year, he participated as a speaker in the conferences organized by the same institution, with the topic "Sources of Obligations".

Later, in March 1989, he was a speaker at the First International Civil Law Week, with the topic "Purpose of the Contract Frustration", a speech that was later published in the magazine of the Escuela Libre de Derecho.

This magazine also published articles by Emilio Gonzalez de Castilla del Valle concerning divorce and the new grounds for separation for two years, as well as donations between spouses.

His article related to Transsexuals' Legal Problems was published in the Anales de Jurisprudencia, Tome 220 –year 5, Third Epoch, July, August and September 1994, of the Superior Court of Justice of the Federal District.

From nineteen ninety-one to nineteen ninety-two, he was a member of the Board of Trustees of the French-Mexican Chamber of Commerce and Industry.

He has been appointed as arbitrator at the Mexican National Chamber of Commerce. He currently is a member of the Arbitration Commission of such Chamber. He is also a member of CAMCA and ICC (Mexican Chapter) and has been engaged in several arbitration procedures before ICC, the Mexican Chamber of Commerce and AAA (Currently ICDR) and CAM (Centro de Arbitraje de México) as Party counsel or as arbitrator.

He participated in a Conference organized by The Barra Mexicana Colegio de Abogados de Aguascalientes on November 26, 27 and 28, 1998 in Aguascalientes with the subject: "Compounded Interest and the Mexican Supreme Court's Resolution on the Subject". He also delivered a Conference on the same topic before the American Chamber Mexico.

On January 20, 1999 he delivered a speech before the Civil Law Committee of the Mexican Bar Association regarding "Pledge over Intangibles. He has participated on several occasions as a speaker in a seminar on Commercial

Arbitration organized by "Instituto Tecnológico Autónomo de México" with the subject "Comparison of Commercial Arbitration vs Court Proceedings".

In 1998 and 1999 he participated as member of the group formed by the Mexico City Judiciary to Draft the amendments to the Civil Procedural Code for Mexico City. On June 15, 1999 he also delivered a speech on the subject of evidence and also on arbitration in accordance with the above Draft before the Civil Law Committee of the Mexican Bar Association.

On March 2000 he commented certain topics on Civil Obligations of the Draft New Civil Code for Mexico City (so called the Cardenas Draft) as part of the Conferences organized by the "Escuela Libre de Derecho". With the same topic he participated in similar seminar organized by the Civil Law Commission of the Mexican Bar Association.

On July 1, 2000 he participated as a speaker I the XXI Conference of ANEFAC (Asociación Nacional de Especialistas Fiscales, A.C.) with the topic "Legal Aspects of International Mergers and Dimergers."

On May, 1999 he was appointed "Deputy Secretary General" for México and Central America by the International Bar Association and he also served as Chair of Committee 18 on professional conduct and ethics.

On April 13, 2000 he participated as speaker in the Conference organized by IFA (International Fiscal Association) in Mexico City with the topic of "Legal Aspects of Electronic Commerce".

On February 20 and 21, 2000 he participated as a speaker in the program related with CANACO, AAA (ICDR) and CAMCA arbitration Rules.

On August 2001 he lectured before the Federal Courts in the Special Courses in the Administration of Justice organized by the Federal Court's Institute; with the subject of Civil Responsibility.

On September 27, 2001 he participated as a speaker in the seminar organized by the Mexican Chapter of the International Chamber of Commerce with the subject of Mexican Copyright Law and Alternative Dispute resolutions.

During the Seminar on Private International Law and Comparative Law that took place in Mexico City from October 15 through October 19, 2001 he participated as speaker with the subject "Enforcement of Foreign Judgments in México".

On March 13, 2002 he participated as speaker in a seminar organized by the Asociación Nacional de Abogados de Empresa A.C. in coordination with the Centro de Arbitraje de Mexico, with the subject "ICC International Court of Arbitration, its structure, its role and powers."

On September 27 and 28 of 2002 he participated as speaker in the 7th National Congress organized by the Mexican Bar Association with the paper "Moral Damages (Pain & Suffering) a proposal for Amendment". Such paper was published in the Congress memoirs.

During the International Bar Association Congress of September 2002 in Durban, South Africa he participated as speaker within Committee "D" arbitration and Committee 18 arbitration joint session in relation with the Draft Joint Report of the Working Group on Guidelines Regarding the Standard of Bias and Disclosure in International Commercial Arbitration.

On September 23, 2003 he was a speaker in the Seminar organize by the "Centro de Arbitraje de México" and the Mexican Bar Association in Guadalajara, Jalisco.

During the XII Congress of Magistrates and Judges of the Federal Tax and Administrative matters Tribunal, he participated with a paper addressing the Constitutional issues of such tribunal. Such paper was published and revisited during the 8th National Congress organized by the Mexican Bar Association. In may 2004.

He participated as speaker during the first Congress organized by the Ministry of Internals Affairs with the paper of the Role of Bar Associations and the Rule of Law.

He published a paper regarding comments on the binding precedent of Moral damages (Pain & Suffering) and Health Institutions. This within the Mexican Bar Association publication commenting on Court Precedents.

During January 2004 he submitted two papers to the Supreme Court: the first on the Role of the Legal Profession and Bar Associations in the Judiciary, and the second on the Constitutional support for the federal Administrative Tribunals. All within the Supreme Court's call on comments to improve the Judiciary.

He presented a paper on "Unregulated Contracts in México" in the Seminar organized by The National University of México gathering Latinamerican Countries and scholars and also on "Put & Call Options in Mexico.

In March and May of 2006 he participated as panelist in the arbitration seminars organized by ICDR-CANACO in Newport Beach Ca. and Mexico City respectively.

On June 1 and 2 of 2006 he participated as guest professor in the summer program organized by GTO Summer Law Institute, a consortium integrated by Southwestern Law School, U. Of New Mexico Law School, Texas Tech University Law School, and U. Of Guanajuato Law School. It took place in Guanajuato, Gto.

In July 2006 he wrote a paper on the Hague Draft Convention on the Choice of Court Agreement published in Southwestern Journal of Law and Trade in the Americas Vol XIII 2006 No 1.

He also published a paper on Moral Damages commenting on both Federal and Local law legislation amendments. Published Revista Escuela Libre de Derecho No 31

On June 12, 2007 he participated as a speaker in the International Arbitration Conference organized by ICDR, the Mexican bar Association, and the Mexican national Chamber of Commerce with the topic of Provisional Emergency Measures.

**OTHER ACTIVITIES WITHIN THE PROFESSION**: He was a member of the Council of the Mexican Bar Association, for several years, until nineteen ninety-four. He was appointed again in 1998 as member of the Board and he was appointed Second Vicepresident (2001-2002). He also chaired the Ethics Committee (2001 – 2002) On February 25 2002 he was elected First Vicepresident. He was appointed President of the Mexican Bar Association for the 2003 – 2004 term.* (the actual term of office rune from February 2003 through February 2005)

He was deputy Secretary General for Mexico and Central America during 1999-2000; Chair of the Ethics Committee 2001-2006 in the International Bar Association.

## LIC. EMILIO GONZALEZ DE CASTILLA DEL VALLE

## CÓDIGO CIVIL PARA EL ESTADO DE QUINTANA ROO

*Última reforma publicada en el Periódico Oficial el 27 de noviembre del 2007.*

**LA HONORABLE II LEGISLATURA CONSTITUCIONAL DEL ESTADO LIBRE Y SOBERANO DE QUINTANA ROO.**

**DECRETA**

**CÓDIGO CIVIL PARA EL ESTADO DE QUINTANA ROO**

DISPOSICIONES SOBRE LA LEY EN GENERAL

**ARTÍCULOS**
1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33

**LIBRO PRIMERO**
PARTE GENERAL
DE LOS HECHOS, ACTOS Y NEGOCIOS JURÍDICOS

**TITULO PRIMERO**
DISPOSICIONES PRELIMINARES

**ARTÍCULOS**
34, 35, 36, 37, 38, 39, 40, 41, 42, 43

TITULO SEGUNDO
DE LOS ACTOS JURÍDICOS NOMINADOS QUE GENERAN OBLIGACIONES

**CAPITULO PRIMERO**
**DE LA GESTIÓN DE LOS NEGOCIOS AJENOS**

ARTÍCULOS
44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59

CAPITULO SEGUNDO
DEL ENRIQUECIMIENTO ILEGITIMO

ARTÍCULOS
60, 61, 62, 63, 64, 65, 66

CAPITULO TERCERO
DEL PAGO DE LO INDEBIDO

ARTÍCULOS
67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86

CAPITULO CUARTO
DE LOS ILÍCITOS CIVILES

SECCIÓN PRIMERA
DE LA RESPONSABILIDAD POR HECHOS PROPIOS

ARTÍCULOS
87, 88, 89, 90, 91

SECCIÓN SEGUNDA
DE LA RESPONSABILIDAD POR HECHOS AJENOS

SECCIÓN DÉCIMO SEGUNDO
LEGADO DE ESPECIES

ARTÍCULO
1394

SECCIÓN DÉCIMO TERCERO
LEGADO DE DINERO

ARTÍCULOS
1395, 1396

SECCIÓN DÉCIMO CUARTO
LEGADO DE ALIMENTOS

ARTÍCULOS
1397, 1398, 1399

SECCIÓN DÉCIMO QUINTO
LEGADO DE EDUCACIÓN

ARTÍCULO
1400

SECCIÓN DÉCIMO SEXTO
LEGADO DE PENSIÓN

ARTÍCULO
1401

SECCIÓN DÉCIMO SÉPTIMO
LEGADO DE USO, HABITACIÓN Y SERVIDUMBRE

ARTÍCULOS
1402, 1403, 1404

CAPITULO OCTAVO
DE LAS SUBSTITUCIONES

ARTÍCULOS
1405, 1406, 1407, 1408, 1409, 1410, 1411, 1412, 1413, 1414, 1415

CAPITULO NOVENO
DE LA NULIDAD, REVOCACIÓN Y CADUCIDAD EN MATERIA TESTAMENTARIA

SECCIÓN PRIMERO
DE LA NULIDAD

ARTÍCULOS
1416, 1417, 1418, 1419, 1420, 1421, 1422, 1423

SECCIÓN SEGUNDO

CAPITULO QUINTO
ACREEDORES DE SEGUNDA CLASE

ARTÍCULO
2539

CAPITULO SEXTO
ACREEDORES DE TERCERA CLASE

ARTÍCULO
2540

CAPITULO SÉPTIMO
ACREEDORES DE CUARTA CLASE

ARTÍCULOS
2541, 2542

LIBRO TERCERO
DE LA CUARTA PARTE ESPECIAL
DE LOS CONTRATOS EN PARTICULAR

TITULO PRIMERO
DE LA PROMESA

ARTÍCULOS
2543, 2544, 2545, 2546, 2547

TITULO SEGUNDO
DE LA COMPRAVENTA

CAPITULO PRIMERO
DISPOSICIONES GENERALES

ARTÍCULOS
2548, 2549, 2550, 2551, 2552, 2553, 2554, 2555, 2556, 2557

CAPITULO SEGUNDO
DE LA MATERIA DE LA COMPRAVENTA

ARTÍCULOS
2558, 2559, 2560, 2561, 2562,

CAPITULO TERCERO
DE LOS QUE PUEDEN VENDER Y COMPRAR

ARTÍCULOS
2563, 2564, 2565, 2566, 2567, 2568

CAPITULO CUARTO
DE LAS OBLIGACIONES Y DERECHOS DEL VENDEDOR

ARTÍCULOS

1365, 1366, 1367, 1368, 1369, 1370, 1371, 1372,
1373, 1374

SECCIÓN QUINTA
LEGADO DE UNA GARANTÍA

ARTÍCULOS
1375, 1376

SECCIÓN SEXTA
DEL LEGADO DE BIEN HIPOTECADO O DADO
EN PRENDA

ARTÍCULOS
1377, 1378, 1379

SECCIÓN SÉPTIMO
LEGADO DE DEUDA

ARTÍCULOS
1380, 1381

SECCIÓN OCTAVO
LEGADO EN FAVOR DEL ACREEDOR

ARTÍCULOS
1382, 1383, 1384

SECCIÓN NOVENO
LEGADO DE CRÉDITO

ARTÍCULOS
1385, 1386, 1387, 1388

SECCIÓN DÉCIMO
LEGADO GENÉRICO DE LIBERACIÓN DE
DEUDAS

ARTÍCULO
1389

SECCIÓN DÉCIMO PRIMERO
LEGADO DE BIEN INDETERMINADO

ARTÍCULOS
1390, 1391, 1392, 1393

CAPITULO PRIMERO
DISPOSICIONES GENERALES

ARTÍCULOS
2517, 2518, 2519, 2520, 2521, 2522, 2523, 2524,
2525, 2526, 2527, 2528

CAPITULO SEGUNDO
DE LOS CRÉDITOS HIPOTECARIOS Y
PIGNORATICIOS

ARTÍCULOS
2529, 2530, 2531, 2532, 2533, 2534, 2535, 2536

CAPITULO TERCERO
DE ALGUNOS ACREEDORES PREFERENTES
SOBRE DETERMINADOS BIENES

ARTÍCULO
2537

CAPITULO CUARTO
ACREEDORES DE PRIMERA CLASE

ARTÍCULO
2538

**Artículo1.-** Las disposiciones de este título, salvo precepto expreso en contrario, son comunes a todo el Derecho Positivo del Estado de Quintana Roo, y las de este Código son supletorias, en lo conducente, de las demás leyes quintanarroenses.

**Artículo2.-** Las leyes del Estado se aplicarán a todos los habitantes de Quintana Roo sin distinción de personas cualquiera que sea su sexo, o nacionalidad, estén domiciliadas en el Estado o se hallen en él de paso.

Las leyes que establecen excepciones a las reglas generales, no son aplicables a caso alguno que no esté expresamente especificado en las mismas leyes.

**Artículo 3.-** Las leyes, reglamentos, o cualesquiera otras disposiciones de observancia general, obligan y surten sus efectos simultáneamente en todo el territorio del Estado tres días después de su publicación en el Periódico Oficial.

**Artículo 122.-** La reparación del daño causado a los bienes debe consistir, en el restablecimiento de éstos al estado en que se encontraban antes de que aquél se produjera.

**Artículo 123.-** Cuando el restablecimiento ordenado en el Artículo anterior sea imposible, la reparación consistirá en el pago en dinero de los daños y perjuicios consiguientes, entendiéndose por daños, para este efecto, los menoscabos y deterioros causados materialmente en el bien, y por perjuicios lo que deje de ganarse lícitamente por el no uso del bien, durante todo el tiempo que transcurra desde la producción del daño hasta su total reparación.

(REFORMADO, P. O. 15 DE MARZO DE 2002)
**Artículo 124.-** Cuando el daño se cause a las personas y le produzca incapacidad total temporal o parcial temporal, la reparación del daño material consistirá en el pago de los servicios profesionales médicos, medicinas, hospitalización y otros, que sean necesarios para la curación de la víctima y, la indemnización de los perjuicios pagando todo lo que el lesionado deje de percibir por su trabajo personal, durante todo el tiempo que transcurra desde que haya sido lesionado, hasta que pueda trabajar.

**Artículo 125.-** Si no existe una percepción fija, la indemnización se calculará por peritos, quienes a este fin tomarán en cuenta las capacidades y aptitudes de la víctima en relación con su profesión, arte, oficio, trabajo o actividad a la que normalmente se dedique; pero si los elementos de que en el caso dispongan los peritos resultaren insuficientes para emitir un dictamen debidamente fundado, lo mismo en el caso de que la víctima no disfrute de ninguna percepción o no desarrolle ninguna actividad productiva, la indemnización de los perjuicios se calculará sobre la base del salario mínimo legalmente vigente en la época o épocas en que el lesionado deje de trabajar.

(REFORMADO, P.O. 15 DE MARZO DE 2002)
**Artículo 126.-** Si el daño origina la muerte, la reparación del daño material consistirá en el pago de los gastos mortuorios y de todos los que en su caso se hubieren hecho con el fin de curar a la víctima de las lesiones que le hayan causado la muerte.

Si el daño origina la incapacidad total permanente o parcial permanente, la reparación del daño material consistirá en el pago de los servicios profesionales médicos, medicinas, hospitalización y otros que se hayan realizado con motivo del daño causado.

**Artículo 127.-** La indemnización económica consistirá en el pago del importe de ochocientos días del salario que percibía la víctima; pero si este salario excede cuatro tantos del mínimo más alto en el Estado, se tomará como tope esa cantidad.

**Artículo 128.-** Si la víctima tenía ingresos variables o no percibía ingreso alguno, se calculará la indemnización, según dispone el Artículo anterior, a razón de ochocientos días del salario mínimo de la zona económica.

**Artículo 129.-** Tendrán derecho al pago de los gastos mortuorios y de curación, en su caso, quienes justifiquen haberlos hecho; y al pago de la indemnización de los perjuicios, las personas que dependían económicamente de la víctima y en su defecto aquellas con quienes vivía familiarmente o las personas de quienes la víctima dependía pecuniariamente. A falta de todos ellos, el derecho pasará a los herederos del occiso.

**Artículo 130.-** Si el deudor fuere económicamente incapaz de pagar en una sola exhibición la cantidad a que se refiere el Artículo anterior, podrá el Juez permitirle que la pague en abonos y con plazos de gracia, fijando el mismo Juez el monto de los abonos y la extensión de los plazos, según las condiciones de las partes.

(REFORMADO, P. O. 15 DE MARZO DE 2002)
**Artículo 131.-** Daño moral es el que se causa en términos del Artículo 2299 de este Código.

Cuando un hecho u omisión produzcan un daño moral, el responsable del mismo tendrá la obligación de repararlo mediante un pago en dinero, con independencia de que se hayan causado daños materiales y perjuicios.
La acción de reparación del daño moral no es transmisible a terceros por acto entre vivos y sólo pasa a los herederos de la víctima cuando ésta haya intentado la acción en vida.

(REFORMADO, P. O. 15 DE MARZO DE 2002)

**Artículo 132.-** Se considerará invariablemente la existencia de daño moral, siempre que el daño se cause a las personas y produzca la muerte, incapacidad total permanente, parcial permanente, total temporal o parcial temporal. En estos casos, para la determinación de la reparación del daño moral el juez tomará como referencia los parámetros de indemnización considerados para los diversos grados de lesión o la muerte, previstos en la Ley Federal del Trabajo.

Además de lo dispuesto en el párrafo anterior, el Juez podrá acordar a favor de la víctima, un incremento de hasta el ochenta por ciento del monto que se fije en los parámetros de lesiones o de muerte previstos en la Ley Federal del Trabajo, atendiendo a las circunstancias del caso.

(REFORMADO, P.O. 15 DE MAR. 2002)
(REFORMADO, P.O. 18 DE ABR. 2007)
**Artículo 133.-** En otros casos donde exista daño moral, el Juez determinará el monto de la reparación de éste tomando en cuenta los derechos lesionados, el grado de responsabilidad, la situación económica del responsable y la de la víctima, así como las demás circunstancias del caso.

Independientemente de lo anterior, cuando el daño moral haya afectado a la víctima en su decoro, honor, reputación o consideración, el Juez ordenará, a petición de ésta y con cargo al responsable, la publicación de un extracto de la sentencia que refleje adecuadamente la naturaleza y alcance de la misma, a través de los medios informativos que considere convenientes. En los casos en que el daño derive de un acto que haya tenido difusión en los medios informativos, el Juez ordenará que los mismos den publicidad al extracto de la sentencia, con la misma relevancia que hubiere tenido la difusión original.

**Artículo 134.-** La acción para exigir la responsabilidad civil, prescribe en dos años contados desde que se causaron los daños o perjuicios.

**TÍTULO TERCERO**
**De los negocios jurídicos**

**CAPÍTULO I**
**Disposiciones preliminares**

Artículo 135.- Son elementos esenciales del negocio jurídico:
    I.    La voluntad;

    II.    El objeto;

    III.    La licitud; y

    IV.    La solemnidad.

Artículo 136.- El objeto directo del negocio jurídico consiste en la creación, transmisión, modificación o extinción de derechos y obligaciones o de situaciones jurídicas concretas.

Artículo 137.- Es lícito el negocio jurídico cuando no está expresa o tácitamente prohibido por la ley y ésta reconoce como efectos de él los deseados por el autor o por las partes.

Artículo 138.- La solemnidad es elemento esencial cuando expresamente la requiera la ley.

Artículo 139.- Son elementos de validez del negocio jurídico:
    I.    La capacidad de ejercicio del autor o de las partes;

    II.    La voluntad no viciada;

    III.    La licitud en el objeto indirecto, en el motivo o fin o en la condición del negocio; y

    IV.    La forma.

**Artículo 2287.-** Si el acreedor rehusare sin justa causa recibir la prestación debida, o dar el documento justificativo del pago, o si fuere persona incierta, ausente o incapaz de recibir, podrá el deudor liberarse de la obligación haciendo el ofrecimiento del pago y la consignación del bien.

**Artículo 2288.-** Si el acreedor fuere conocido, pero dudosos sus derechos, podrá el deudor depositar el bien debido, con citación del interesado, a fin de que justifique sus derechos por los medios legales.

**Artículo 2289.-** El ofrecimiento y la consignación se harán en forma y términos que establezca el Código de Procedimientos Civiles.

**Artículo 2290.-** Si el juez declara fundada la oposición del acreedor para recibir el pago, el ofrecimiento y la consignación se tendrán como no hechos; pero si éstos son aprobados por el juez, la obligación quedará extinguida con todos sus efectos.

**Artículo 2291.-** Los gastos y costas del procedimiento correrán a cargo del perdidoso.

**Artículo 2292.-** Cuando se siga un juicio de rescisión de contrato por falta de pago de pensiones periódicas y el demandado se excepcione con base en las consignaciones que de las mismas ha hecho, la resolución relativa a la procedencia o improcedencia de dichas consignaciones o sobre si es o no fundada la oposición que en su caso llegara a hacerse valer, no se pronunciará en el juicio especial que a tales consignaciones corresponda, sino en la misma sentencia que estudie el negocio en su conjunto y ponga fin al juicio de rescisión.

## CAPÍTULO II
### Del incumplimiento de las obligaciones

### SECCIÓN PRIMERA
#### Consecuencias del incumplimiento de las obligaciones

**Artículo 2293.-** El que incumple una obligación de hacer, bien dejando de prestar el hecho a que se obligó, bien no prestándolo conforme a lo convenido, será responsable de los daños y perjuicios que cause, en los términos siguientes:

I.   Si la obligación fuere a plazo, comenzará la responsabilidad al vencimiento de éste;

II.  Si la obligación no dependiere de plazo cierto, se observará lo dispuesto en la parte final del párrafo segundo del Artículo 2270.

**Artículo 2294.-** El que contravenga una obligación de no hacer pagará daños y perjuicios por el solo hecho de la contravención, sin perjuicio, en su caso, de lo dispuesto de la parte final del Artículo 2254.

**Artículo 2295.-** En las obligaciones de dar que tengan plazo fijo, se observará lo dispuesto en la fracción I del Artículo 2293.

**Artículo 2296.-** Si no tuvieren plazo cierto, se aplicará lo prevenido en la parte inicial del segundo párrafo del Artículo 2270.

**Artículo 2297.-** La responsabilidad procedente de dolo es exigible en todas las obligaciones y la renuncia de hacerla efectiva es nula.

**Artículo 2298.-** La responsabilidad de que se trata en este título, además de importar la devolución del bien o su precio, importará la reparación de los daños y la indemnización de los perjuicios.

**Artículo 2299.-** El daño puede ser material o moral.

Daño material es el que se causa en los términos del Artículo 123, y daño moral, llamado también agravio moral, es todo ataque contra una persona en su honor, en su reputación y prestigio, en su consideración, en sus sentimientos y afectos, en su estimación hacia sus bienes y recuerdos de familia, y aun en su integridad corporal,

cuando independientemente de que disminuyan o no su capacidad de trabajo, las heridas o cicatrices que se le causen afectan a su estética personal.

(ADICIONADO, P.O. 18 DE ABR. 2007)
Estarán sujetos a la reparación del daño moral de acuerdo a lo establecido por este ordenamiento y, por lo tanto, las conductas descritas se consideraran como hechos ilícitos:

I.      El que comunique a una o más personas la imputación que se hace a otra persona física o moral, de un hecho cierto o falso, determinado o indeterminado, que pueda causarle deshonra, descrédito, perjuicio, o exponerlo al desprecio de alguien;

II.     El que impute a otro un hecho determinado y calificado como delito por la ley, si este hecho es falso, o es inocente la persona a quien se imputa;

III.    El que presente denuncias o querellas calumniosas, entendiéndose por tales aquellas en que su autor imputa un delito a una persona determinada, sabiendo que ésta es inocente o que aquel no se ha cometido; y

IV.     Al que ofenda al honor, ataque la vida privada  o la imagen propia de una persona.

(ADICIONADO, P.O. 18 DE ABR. 2007)
La reparación del daño con relación al párrafo e incisos anteriores deberá contener la obligación de la rectificación o respuesta de la información difundida, con el mismo espacio y la misma circulación o audiencia a que fue dirigida la información original, esto sin menoscabo de lo establecido en el párrafo segundo del Artículo 133.

(ADICIONADO, P.O. 18 DE ABR. 2007)
La reproducción fiel de información no da lugar al daño moral, aun en los casos en que la información reproducida no sea correcta y pueda dañar el honor de una persona, pues no constituye una responsabilidad para el que difunde dicha información siempre y cuando se cite la fuente de donde se obtuvo la información.

(ADICIONADO, P.O. 18 DE ABR. 2007)
**Artículo 2299 Bis.-** No estará obligado a la reparación del daño moral quien ejerza sus derechos de opinión, crítica, expresión e información, en los términos y con las limitaciones de los artículos 6 y 7 de la Constitución Política de los Estados Unidos Mexicanos.

En ningún caso se considerarán ofensas al honor las opiniones desfavorables de la crítica literaria, artística, histórica, científica o profesional. Tampoco se considerarán ofensivas las opiniones desfavorables realizadas en cumplimiento de un deber o ejerciendo un derecho cuando el modo de proceder o la falta  de reserva no tenga un propósito ofensivo.

**Artículo 2300.-** Perjuicio es lo que el damnificado deja de ganar lícitamente, en los términos del mismo Artículo 123, como consecuencia del daño sufrido.

**Artículo 2301.-** Los daños y perjuicios deben ser consecuencia inmediata y directa de la falta de cumplimiento de la obligación, ya sea que se hayan causado o que necesariamente deban causarse.

**Artículo 2302.-** Nadie está obligado al caso fortuito ni a la fuerza mayor sino cuando ha dado causa o contribuido a ellos, cuando ha aceptado expresamente esa responsabilidad o cuando la ley se la impone.

**Artículo2303.-** Si el bien se ha perdido o ha sufrido un detrimento tan grave que, a juicio de peritos, no pueda emplearse en el uso a que naturalmente está destinado, el dueño debe ser indemnizado de todo el valor legítimo de él.

**Artículo 2304.-** Si el deterioro es menos grave, sólo el importe de éste se abonará al dueño al restituirse el bien.

**Artículo 2305.-** El precio del bien será el que tendría al tiempo de ser devuelto al dueño, excepto en los casos en que la ley o el pacto señalen otra época.

**LEY FEDERAL DEL TRABAJO**

**Diario Oficial de la Federación 1 de abril de 1970**

**Última reforma publicada DOF 17 de enero de 2006**

Al margen un sello con el Escudo Nacional, que dice: Estados Unidos Mexicanos.- Presidencia de la República.

**GUSTAVO DIAZ ORDAZ**, Presidente Constitucional de los Estados Unidos Mexicanos, a sus habitantes, sabed:

QUE EL H. CONGRESO DE LA UNIÓN SE HA SERVIDO DIRIGIRME EL SIGUIENTE

**DECRETO:**

"EL CONGRESO DE LOS ESTADOS UNIDOS MEXICANOS DECRETA:

**LEY FEDERAL DEL TRABAJO**

**TÍTULO PRIMERO**

**PRINCIPIOS GENERALES**

**ARTÍCULO 1o.** La presente Ley es de observancia general en toda la República y rige las relaciones de trabajo comprendidas en el artículo 123, Apartado "A", de la Constitución.

**ARTÍCULO 2o.** Las normas de trabajo tienden a conseguir el equilibrio y la justicia social en las relaciones entre trabajadores y patrones.

**ARTÍCULO 3o.** El trabajo es un derecho y un deber sociales. No es artículo de comercio, exige respeto para las libertades y dignidad de quien lo presta y debe efectuarse en condiciones que aseguren la vida, la salud y un nivel económico decoroso para el trabajador y su familia.

No podrán establecerse distinciones entre los trabajadores por motivo de raza, sexo, edad, credo religioso, doctrina política o condición social.

Asimismo, es de interés social promover y vigilar la capacitación y el adiestramiento de los trabajadores.

**ARTÍCULO 4o.** No se podrá impedir el trabajo a ninguna persona ni que se dedique a la profesión, industria o comercio que le acomode, siendo lícitos. El ejercicio de estos derechos sólo podrá vedarse por resolución de la autoridad competente cuando se ataquen los derechos de tercero o se ofendan los de la sociedad:

**I.** Se atacan los derechos de tercero en los casos previstos en las leyes y en los siguientes:

**a)** Cuando se trate de substituir o se substituya definitivamente a un trabajador que haya sido separado sin haberse resuelto el caso por la Junta de Conciliación y Arbitraje.

**b)** Cuando se niegue el derecho de ocupar su mismo puesto a un trabajador que haya estado separado de sus labores por causa de enfermedad o de fuerza mayor, o con permiso, al presentarse nuevamente a sus labores; y

**II.** Se ofenden los derechos de la sociedad en los casos previstos en las leyes y en los siguientes:

**a)** Cuando declarada una huelga en los términos que establece esta Ley, se trate de substituir o se substituya a los huelguistas en el trabajo que desempeñan, sin haberse resuelto el conflicto motivo de la huelga, salvo lo que dispone el artículo 468.

**b)** Cuando declarada una huelga en iguales términos de licitud por la mayoría de los trabajadores de una empresa, la minoría pretenda reanudar sus labores o siga trabajando.

## TÍTULO NOVENO

### RIESGOS DE TRABAJO

**ARTÍCULO 472.** Las disposiciones de este Título se aplican a todas las relaciones de trabajo, incluidos los trabajos especiales, con la limitación consignada en el artículo 352.

**ARTÍCULO 473.** Riesgos de trabajo son los accidentes y enfermedades a que están expuestos los trabajadores en ejercicio o con motivo del trabajo.

**ARTÍCULO 474.** Accidente de trabajo es toda lesión orgánica o perturbación funcional, inmediata o posterior, o la muerte, producida repentinamente en ejercicio, o con motivo del trabajo, cualesquiera que sean el lugar y el tiempo en que se preste.

Quedan incluidos en la definición anterior los accidentes que se produzcan al trasladarse el trabajador directamente de su domicilio al lugar del trabajo y de éste a aquél.

**ARTÍCULO 475.** Enfermedad de trabajo es todo estado patológico derivado de la acción continuada de una causa que tenga su origen o motivo en el trabajo o en el medio en que el trabajador se vea obligado a prestar sus servicios.

**ARTÍCULO 476.** Serán consideradas en todo caso enfermedades de trabajo las consignadas en la tabla del artículo 513.

**ARTÍCULO 477.** Cuando los riesgos se realizan pueden producir:

**I.** Incapacidad temporal;

**II.** Incapacidad permanente parcial;

**III.** Incapacidad permanente total; y

**IV.** La muerte.

**ARTÍCULO 478.** Incapacidad temporal es la pérdida de facultades o aptitudes que imposibilita parcial o totalmente a una persona para desempeñar su trabajo por algún tiempo.

**ARTÍCULO 479.** Incapacidad permanente parcial es la disminución de las facultades o aptitudes de una persona para trabajar.

**ARTÍCULO 480.** Incapacidad permanente total es la pérdida de facultades o aptitudes de una persona que la imposibilita para desempeñar cualquier trabajo por el resto de su vida.

**ARTÍCULO 481.** La existencia de estados anteriores tales como idiosincrasias, taras, discrasias, intoxicaciones, o enfermedades crónicas, no es causa para disminuir el grado de la incapacidad, ni las prestaciones que correspondan al trabajador.

**ARTÍCULO 482.** Las consecuencias posteriores de los riesgos de trabajo se tomarán en consideración para determinar el grado de la incapacidad.

**ARTÍCULO 483.** Las indemnizaciones por riesgos de trabajo que produzcan incapacidades, se pagarán directamente al trabajador.

En los casos de incapacidad mental, comprobados ante la Junta, la indemnización se pagará a la persona o personas, de las señaladas en el artículo 501, a cuyo cuidado quede; en los casos de muerte del trabajador, se observará lo dispuesto en el artículo 115.

**ARTÍCULO 484.** Para determinar las indemnizaciones a que se refiere este Título, se tomará como base el salario diario que perciba el trabajador al ocurrir el riesgo y los aumentos posteriores que correspondan al empleo que

desempeñaba, hasta que se determine el grado de la incapacidad, el de la fecha en que se produzca la muerte o el que percibía al momento de su separación de la empresa.

**ARTÍCULO 485.** La cantidad que se tome como base para el pago de las indemnizaciones no podrá ser inferior al salario mínimo.

**ARTÍCULO 486.** Para determinar las indemnizaciones a que se refiere este título, si el salario que percibe el trabajador excede del doble del salario mínimo del área geográfica de aplicación a que corresponda el lugar de prestación del trabajo, se considerará esa cantidad como salario máximo. Si el trabajo se presta en lugares de diferentes áreas geográficas de aplicación, el salario máximo será el doble del promedio de los salarios mínimos respectivos.

**ARTÍCULO 487.** Los trabajadores que sufran un riesgo de trabajo tendrán derecho a:

**I.** Asistencia médica y quirúrgica;

**II.** Rehabilitación;

**III.** Hospitalización, cuando el caso lo requiera;

**IV.** Medicamentos y material de curación;

**V.** Los aparatos de prótesis y ortopedia necesarios; y

**VI.** La indemnización fijada en el presente Título.

**ARTÍCULO 488.** El patrón queda exceptuado de las obligaciones que determina el artículo anterior, en los casos y con las modalidades siguientes:

**I.** Si el accidente ocurre encontrándose el trabajador en estado de embriaguez;

**II.** Si el accidente ocurre encontrándose el trabajador bajo la acción de algún narcótico o droga enervante, salvo que exista prescripción médica y que el trabajador hubiese puesto el hecho en conocimiento del patrón y le hubiese presentado la prescripción suscrita por el médico;

**III.** Si el trabajador se ocasiona intencionalmente una lesión por sí solo o de acuerdo con otra persona; y

**IV.** Si la incapacidad es el resultado de alguna riña o intento de suicidio.

El patrón queda en todo caso obligado a prestar los primeros auxilios y a cuidar del traslado del trabajador a su domicilio o a un centro médico.

**ARTÍCULO 489.** No libera al patrón de responsabilidad:

**I.** Que el trabajador explícita o implícitamente hubiese asumido los riesgos de trabajo;

**II.** Que el accidente ocurra por torpeza o negligencia del trabajador; y

**III.** Que el accidente sea causado por imprudencia o negligencia de algún compañero de trabajo o de una tercera persona.

**ARTÍCULO 490.** En los casos de falta inexcusable del patrón, la indemnización podrá aumentarse hasta en un veinticinco por ciento, a juicio de la Junta de Conciliación y Arbitraje. Hay falta inexcusable del patrón:

**I.** Si no cumple las disposiciones legales y reglamentarias para la prevención de los riesgos de trabajo;

**II.** Si habiéndose realizado accidentes anteriores, no adopta las medidas adecuadas para evitar su repetición;

**III.** Si no adopta las medidas preventivas recomendadas por las comisiones creadas por los trabajadores y los patrones, o por las autoridades del Trabajo;

**IV.** Si los trabajadores hacen notar al patrón el peligro que corren y éste no adopta las medidas adecuadas para evitarlo; y

**V.** Si concurren circunstancias análogas, de la misma gravedad a las mencionadas en las fracciones anteriores.

**ARTÍCULO 491.** Si el riesgo produce al trabajador una incapacidad temporal, la indemnización consistirá en el pago íntegro del salario que deje de percibir mientras subsista la imposibilidad de trabajar. Este pago se hará desde el primer día de la incapacidad.

Si a los tres meses de iniciada una incapacidad no está el trabajador en aptitud de volver al trabajo, él mismo o el patrón podrá pedir, en vista de los certificados médicos respectivos, de los dictámenes que se rindan y de las pruebas conducentes, se resuelva si debe seguir sometido al mismo tratamiento médico y gozar de igual indemnización o procede declarar su incapacidad permanente con la indemnización a que tenga derecho. Estos exámenes podrán repetirse cada tres meses. El trabajador percibirá su salario hasta que se declare su incapacidad permanente y se determine la indemnización a que tenga derecho.

**ARTÍCULO 492.** Si el riesgo produce al trabajador una incapacidad permanente parcial, la indemnización consistirá en el pago del tanto por ciento que fija la tabla de valuación de incapacidades, calculado sobre el importe que debería pagarse si la incapacidad hubiese sido permanente total. Se tomará el tanto por ciento que corresponda entre el máximo y el mínimo establecidos, tomando en consideración la edad del trabajador, la importancia de la incapacidad y la mayor o menor aptitud para ejercer actividades remuneradas, semejantes a su profesión u oficio. Se tomará asimismo en consideración si el patrón se ha preocupado por la reeducación profesional del trabajador.

**ARTÍCULO 493.** Si la incapacidad parcial consiste en la pérdida absoluta de las facultades o aptitudes del trabajador para desempeñar su profesión, la Junta de Conciliación y Arbitraje podrá aumentar la indemnización hasta el monto de la que correspondería por incapacidad permanente total, tomando en consideración la importancia de la profesión y la posibilidad de desempeñar una de categoría similar, susceptible de producirle ingresos semejantes.

**ARTÍCULO 494.** El patrón no estará obligado a pagar una cantidad mayor de la que corresponda a la incapacidad permanente total aunque se reúnan más de dos incapacidades.

**ARTÍCULO 495.** Si el riesgo produce al trabajador una incapacidad permanente total, la indemnización consistirá en una cantidad equivalente al importe de mil noventa y cinco días de salario.

**ARTÍCULO 496.** Las indemnizaciones que debe percibir el trabajador en los casos de incapacidad permanente parcial o total, le serán pagadas íntegras, sin que se haga deducción de los salarios que percibió durante el período de incapacidad temporal.

**ARTÍCULO 497.** Dentro de los dos años siguientes al en que se hubiese fijado el grado de incapacidad, podrá el trabajador o el patrón solicitar la revisión del grado, si se comprueba una agravación o una atenuación posterior.

**ARTÍCULO 498.** El patrón está obligado a reponer en su empleo al trabajador que sufrió un riesgo de trabajo, si está capacitado, siempre que se presente dentro del año siguiente a la fecha en que se determinó su incapacidad.

No es aplicable lo dispuesto en el párrafo anterior si el trabajador recibió la indemnización por incapacidad permanente total.

**ARTÍCULO 499.** Si un trabajador víctima de un riesgo no puede desempeñar su trabajo, pero sí algún otro, el patrón estará obligado a proporcionárselo, de conformidad con las disposiciones del contrato colectivo de trabajo.

**ARTÍCULO 500.** Cuando el riesgo traiga como consecuencia la muerte del trabajador, la indemnización comprenderá:

**I.** Dos meses de salario por concepto de gastos funerarios; y

**II.** El pago de la cantidad que fija el artículo 502.

73

**ARTÍCULO 501.** Tendrán derecho a recibir la indemnización en los casos de muerte:

**I.** La viuda, o el viudo que hubiese dependido económicamente de la trabajadora y que tenga una incapacidad de cincuenta por ciento o más, y los hijos menores de dieciséis años y los mayores de esta edad si tienen una incapacidad de cincuenta por ciento o más;

**II.** Los ascendientes concurrirán con las personas mencionadas en la fracción anterior, a menos que se pruebe que no dependían económicamente del trabajador;

**III.** A falta de cónyuge supérstite, concurrirá con las personas señaladas en las dos fracciones anteriores, la persona con quien el trabajador vivió como si fuera su cónyuge durante los cinco años que precedieron inmediatamente a su muerte, o con la que tuvo hijos, siempre que ambos hubieran permanecido libres de matrimonio durante el concubinato.

**IV.-** A falta de cónyuge supérstite, hijos y ascendientes, las personas que dependían económicamente del trabajador concurrirán con la persona que reúna los requisitos señalados en la fracción anterior, en la proporción en que cada una dependía de él; y

**V.** A falta de las personas mencionadas en las fracciones anteriores, el Instituto Mexicano del Seguro Social.

**ARTÍCULO 502.** En caso de muerte del trabajador, la indemnización que corresponda a las personas a que se refiere el artículo anterior será la cantidad equivalente al importe de setecientos treinta días de salario, sin deducir la indemnización que percibió el trabajador durante el tiempo en que estuvo sometido al régimen de incapacidad temporal.

**ARTÍCULO 503.** Para el pago de la indemnización en los casos de muerte por riesgo de trabajo, se observarán las normas siguientes:

**I.** La Junta de Conciliación Permanente o el Inspector del Trabajo que reciba el aviso de la muerte, o la Junta de Conciliación y Arbitraje ante la que se reclame el pago de la indemnización, mandará practicar dentro de las veinticuatro horas siguientes una investigación encaminada a averiguar qué personas dependían económicamente del trabajador y ordenará se fije un aviso en lugar visible del establecimiento donde prestaba sus servicios, convocando a los beneficiarios para que comparezcan ante la Junta de Conciliación y Arbitraje, dentro de un término de treinta días, a ejercitar sus derechos;

**II.** Si la residencia del trabajador en el lugar de su muerte era menor de seis meses, se girará exhorto a la Junta de Conciliación Permanente, a la de Conciliación y Arbitraje o al Inspector del Trabajo del lugar de la última residencia, a fin de que se practique la investigación y se fije el aviso mencionado en la fracción anterior;

**III.** La Junta de Conciliación Permanente, la de Conciliación y Arbitraje o el Inspector del Trabajo, independientemente del aviso a que se refiere la fracción I, podrá emplear los medios publicitarios que juzgue conveniente para convocar a los beneficiarios;

**IV.** La Junta de Conciliación Permanente, o el Inspector del Trabajo, concluida la investigación, remitirá el expediente a la Junta de Conciliación y Arbitraje;

**V.** Satisfechos los requisitos señalados en las fracciones que anteceden y comprobada la naturaleza del riesgo, la Junta de Conciliación y Arbitraje, con audiencia de las partes, dictará resolución, determinando qué personas tienen derecho a la indemnización;

**VI.** La Junta de Conciliación y Arbitraje apreciará la relación de esposo, esposa, hijos y ascendientes, sin sujetarse a las pruebas legales que acrediten el matrimonio o parentesco, pero no podrá dejar de reconocer lo asentado en las actas del Registro Civil; y

**VII.** El pago hecho en cumplimiento de la resolución de la Junta de Conciliación y Arbitraje libera al patrón de responsabilidad. Las personas que se presenten a deducir sus derechos con posterioridad a la fecha en que se hubiese verificado el pago, sólo podrán deducir su acción en contra de los beneficiarios que lo recibieron.

## CÓDIGO DE PROCEDIMIENTOS CIVILES PARA EL ESTADO LIBRE Y SOBERANO DE QUINTANA ROO

*Última Reforma Publicada en el Periódico Oficial el 15 de Octubre del 2007.*

Código publicado el 8 de enero de 1981.

**CIUDADANO LICENCIADO JESÚS MARTÍNEZ ROSS, Gobernador Constitucional del Estado, a sus habitantes sabed:**

Que la H. II Legislatura Constitucional del Estado ha tenido a bien expedir el siguiente:

### DISPOSICIONES GENERALES

### TITULO PRIMERO
### De las acciones y excepciones

### CAPITULO I
### De las acciones

**Artículo 1o.-** El ejercicio de las acciones civiles requiere:

I.    La existencia de un derecho;

II.   La violación de un derecho o el desconocimiento de una obligación, o la necesidad de declarar, preservar o constituir un derecho;

III.  La capacidad para ejercitar la acción por sí o por legítimo representante;

IV.   El interés en el actor para deducirla.

Falta el requisito del interés siempre que no pueda alcanzarse el objeto de una acción, aun suponiendo favorable la sentencia.

La existencia de los requisitos esenciales de la acción, deberá ser estudiada de oficio, por el tribunal de la sentencia definitiva.

**Artículo 2o.-** La acción procede en juicio, aun cuando no se exprese su nombre, con tal que se determine con claridad la clase de prestación que se exija del demandado y el título o causa de la acción.

**Artículo 3o.-** Por las acciones reales se reclamarán la herencia, los derechos reales o la declaración de libertad de gravámenes reales. Se dan y se ejercitan contra el que tiene en su poder la cosa y tiene obligación real, con excepción de la petición de herencia y la negatoria.

**Artículo 4o.-** La reivindicación compete a quien no está en posesión de la cosa, de la cual tiene la propiedad, y su efecto será declarar que el actor tiene dominio sobre ella y se la entregue al demandado con sus frutos y accesiones en los términos prescritos por el Código Civil

**Artículo 5o.-** El tenedor de la cosa puede declinar la responsabilidad del juicio designando al poseedor que lo sea a título de dueño.

**Artículo 6o.-** El poseedor que niegue la posesión la perderá en beneficio del demandante.

**Artículo 7o.-** Pueden ser demandados en reivindicación, aunque no posean la cosa, el poseedor que para evitar los efectos de la acción reivindicatoria dejó de poseer y el que está obligado a restituir la cosa o su estimación si la sentencia fuere condenatoria. El demandado que paga la estimación de la cosa puede ejercitar a su vez la reivindicación.

IV.    El que fuere condenado por dos sentencias conformes de toda conformidad en su parte resolutiva, sin tomar en cuenta la declaración sobre costas. En este caso, la condenación comprenderá las costas de ambas instancias;

V.    En el caso del artículo 257.

**Artículo 141.-** La condenación no comprenderá la remuneración del mandatario ni la del patrono, sino cuando fueren abogados recibidos.

Los abogados extranjeros no podrán cobrar costas, sino cuando estén autorizados legalmente para ejercer su profesión y haya reciprocidad internacional con el país de su origen en el ejercicio de la abogacía.

**Artículo 142.-** Las costas serán reguladas por la parte a cuyo favor se hubieren declarado y se substanciará el incidente con un escrito de cada parte, resolviéndose dentro del tercer día.

**Artículo 143.-** En los negocios ante los jueces menores no se causarán costas, cualquiera que sea la naturaleza del juicio

**TITULO TERCERO
De la Competencia**

**CAPITULO I
Disposiciones Generales**

**Artículo 144.-** Toda demanda debe formularse ante juez competente.

**Artículo 145.-** La competencia de los tribunales se determinará por la materia, la cuantía, el grado y el territorio.

**Artículo 146.-** Ningún tribunal puede negarse a conocer de un asunto sino por considerarse incompetente. En este caso debe expresar en su resolución los fundamentos legales en que se apoye.

**Artículo 147.-** Ningún juez puede sostener competencia con un Tribunal Superior bajo cuya jurisdicción se halle; pero sí con otro tribunal que, aunque sea superior en su clase, no ejerza jurisdicción sobre él.

**Artículo 148.-** El Tribunal que reconozca la jurisdicción de otro por providencia expresa, no puede sostener su competencia.

**Artículo 149.-** Las partes pueden desistirse de seguir sosteniendo la competencia de un Tribunal, antes o después de la remisión de los autos al Superior, si se trata de jurisdicción territorial.

**Artículo 150.-** La jurisdicción por razón del territorio es la única que se puede prorrogar.

**Artículo 151.-** Si el juez deja de conocer por recusación o excusa, se estará a lo que sobre el particular prevenga la Ley Orgánica del Poder Judicial.

**Artículo 152.-** Es juez competente aquel al que los litigantes se hubieren sometido expresa o tácitamente, cuando se trate del fuero renunciable.

**Artículo 153.-** Hay sumisión expresa cuando los interesados renuncian clara y terminantemente al fuero que la ley les concede y designan con toda precisión el juez a quién se someten.

**Artículo 154.-** Se entienden sometidos tácitamente:

I.   El demandante, por el hecho de ocurrir al juez entablando su demanda;

II.   El demandado, por contestar la demanda o por reconvenir al actor;

III.   El que habiendo promovido una competencia se desiste de ella;

IV.   El tercer opositor y el que por cualquier motivo viniere a juicio.

**Artículo 155.-** Es nulo lo actuado por el Juez, que fuere declarado incompetente. Salvo:

I.   Lo dispuesto en el artículo 164;

II.   Cuando la incompetencia sea por razón del territorio y convengan las partes en la validez;

III.   Si se trata de incompetencia sobrevenida, y

IV.   Los casos que la ley exceptúe.

**Artículo 156.-** La nulidad a que se refiere el artículo anterior es de pleno derecho.

Los Tribunales declarados competentes harán que las cosas se restituyan al estado que tenían antes de practicarse las actuaciones nulas; salvo que la ley disponga lo contrario.

## CAPITULO II
### Reglas para la fijación de la competencia

**Artículo 157.-** Es juez competente:

I.   El del lugar que el deudor haya designado para ser requerido judicialmente de pago;

II.   El del lugar señalado en el contrato para el cumplimiento de la obligación. Tanto en este caso, como en el anterior, surte el fuero no sólo para la ejecución o cumplimiento del contrato, sino para la rescisión o nulidad;

III.   El de la ubicación de la cosa, si se ejercita una acción real sobre bienes inmuebles. Lo mismo se observará respecto a las cuestiones derivadas del contrato de arrendamiento de inmuebles. Cuando estuvieren comprendidos en dos o más partidos, será a prevención;

IV.   El del domicilio del demandado, si se trata de ejercicio de una acción sobre bienes muebles, o de acciones personales o del estado civil.

   Cuando sean varios los demandados y tuvieren diversos domicilios será competente el juez del domicilio que escoja el actor;

V.   En los juicios hereditarios, el juez en cuya comprensión haya tenido su último domicilio el autor de la herencia; a falta de ese domicilio lo será el de la ubicación de los bienes raíces que forman la herencia, y si estuvieren en varios distritos, el juez de cualquiera de ellos a prevención; y a falta de domicilio y bienes raíces, el del lugar del fallecimiento del autor de la herencia. Lo mismo se observará en casos de audiencia;

VI.   Aquel en cuyo territorio radica un juicio sucesorio para conocer:

a.   De las acciones de petición de herencia;

   ADICIONADO P.O. 28 SEP. 2007
   REFORMADO P.O. 15 OCT. 2007
   El Juez competente que inicie un procedimiento sucesorio deberá solicitar un informe sobre la existencia o inexistencia de alguna disposición testamentaria otorgada por el autor de la sucesión al Registro Público de la Propiedad y del Comercio, y la Dirección General de Notarías;

b.   De las acciones contra la sucesión antes de la partición y adjudicación de los bienes;

c.   De las acciones de nulidad, rescisión y evicción de la partición hereditaria;

VII.   En los concursos de acreedores, el del juez del domicilio del deudor;

VIII.   En los actos de jurisdicción voluntaria, el del domicilio del que promueve, pero si se tratare de bienes raíces, lo será el del lugar donde estén ubicados;

**CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS**

**DO 5 de febrero de 1917**
**Fe de erratas 6 de febrero de 1917**
**Actualizada con la reforma publicada el 13 de noviembre de 2007**
**a los artículos 6o., 41, 85, 97, 99, 108, 116, 122 y 134.**

El C. Primer Jefe del Ejército Constitucionalista, encargado del Poder Ejecutivo de la Nación, con esta fecha se ha servido dirigirme el siguiente Decreto:

**VENUSTIANO CARRANZA, PRIMER JEFE DEL EJÉRCITO CONSTITUCIONALISTA**, Encargado del Poder Ejecutivo de los Estados Unidos Mexicanos, hago saber:

Que el Congreso Constituyente reunido en esta ciudad el 1o. de diciembre de 1916, en virtud del decreto de convocatoria de 19 de septiembre del mismo año, expedido por la Primera Jefatura, de conformidad con lo prevenido en el artículo 4o. de las modificaciones que el 14 del citado mes se hicieron al decreto de 12 de diciembre de 1914, dado en la H. Veracruz, adicionando el Plan de Guadalupe de 26 de marzo de 1913, ha tenido a bien expedir la siguiente:

**CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS QUE REFORMA LA DE 5 DE FEBRERO DE 1857**

**TÍTULO PRIMERO**

**CAPÍTULO I**

**De las garantías individuales**

**ARTÍCULO 1°.-** En los Estados Unidos Mexicanos todo individuo gozará de las garantías que otorga esta Constitución, las cuales no podrán restringirse ni suspenderse, sino en los casos y con las condiciones que ella misma establece.

Está prohibida la esclavitud en los Estados Unidos Mexicanos. Los esclavos del extranjero que entren al territorio nacional alcanzarán, por este solo hecho, su libertad y la protección de las leyes.

Queda prohibida toda discriminación motivada por origen étnico o nacional, el género, la edad, las discapacidades, la condición social, las condiciones de salud, la religión, las opiniones, las preferencias, el estado civil o cualquier otra que atente contra la dignidad humana y tenga por objeto anular o menoscabar los derechos y libertades de las personas.

Queda prohibida toda discriminación motivada por origen étnico o nacional, el género, la edad, las capacidades diferentes, la condición social, las condiciones de salud, la religión, las opiniones, las preferencias, el Estado civil o cualquier otra que atente contra la dignidad humana y tenga por objeto anular o menoscabar los derechos y libertades de las personas.

**ARTÍCULO 2°.-** La Nación Mexicana es única e indivisible.

La Nación tiene una composición pluricultural sustentada originalmente en sus pueblos indígenas que son aquellos que descienden de poblaciones que habitaban en el territorio actual del país al iniciarse la colonización y que conservan sus propias instituciones sociales, económicas, culturales y políticas, o parte de ellas.

La conciencia de su identidad indígena deberá ser criterio fundamental para determinar a quiénes se aplican las disposiciones sobre pueblos indígenas.

Cada Estado y el Distrito Federal están obligados a entregar sin demora a los indiciados, procesados o sentenciados, así como practicar el aseguramiento y entrega de objetos, instrumentos o productos del delito, atendiendo a la autoridad de cualquier otra entidad federativa que los requiera. Estas diligencias se practicarán, con intervención de las respectivas procuradurías generales de justicia, en los términos de los convenios de colaboración que, al efecto, celebran las entidades federativas. Para los mismos fines, los Estados y el Distrito Federal podrán celebrar convenios de colaboración con el Gobierno Federal, quien actuará a través de la Procuraduría General de la República.

Las extradiciones a requerimiento de Estado extranjero, serán tramitadas por el Ejecutivo Federal, con la intervención de la autoridad judicial en los términos de esta Constitución, los Tratados Internacionales que al respecto se suscriban y las leyes reglamentarias. En esos casos, el auto del juez que mande cumplir la requisitoria será bastante para motivar la detención hasta por sesenta días naturales.

**ARTÍCULO 120.-** Los Gobernadores de los Estados están obligados a publicar y hacer cumplir las leyes federales.

**ARTÍCULO 121.-** En cada Estado de la Federación se dará entera fe y crédito de los actos públicos, registros y procedimientos judiciales de todos los otros. El Congreso de la Unión, por medio de leyes generales, prescribirá la manera de probar dichos actos, registros y procedimientos, y el efecto de ellos, sujetándose a las bases siguientes:

**I.** Las leyes de un Estado sólo tendrán efecto en su propio territorio, y, por consiguiente, no podrán ser obligatorias fuera de él.

**II.** Los bienes muebles e inmuebles se regirán por la ley del lugar de su ubicación.

**III.** Las sentencias pronunciadas por los tribunales de un Estado sobre derechos reales o bienes inmuebles ubicados en otro Estado, sólo tendrán fuerza ejecutoria en éste, cuando así lo dispongan sus propias leyes.

Las sentencias sobre derechos personales sólo serán ejecutadas en otro Estado, cuando la persona condenada se haya sometido expresamente o por razón de domicilio, a la justicia que las pronunció, y siempre que haya sido citada personalmente para ocurrir al juicio.

**IV.** Los actos del estado civil ajustados a las leyes de un Estado, tendrán validez en los otros.

**V.** Los títulos profesionales expedidos por las autoridades de un Estado, con sujeción a sus leyes, serán respetados en los otros.

**ARTÍCULO 122.-** Definida por el artículo 44 de este ordenamiento la naturaleza jurídica del Distrito Federal, su gobierno está a cargo de los Poderes Federales y de los órganos Ejecutivo, Legislativo y Judicial de carácter local, en los términos de este artículo.

Son autoridades locales del Distrito Federal, la Asamblea Legislativa, el Jefe de Gobierno del Distrito Federal y el Tribunal Superior de Justicia.

La Asamblea Legislativa del Distrito Federal se integrará con el número de diputados electos según los principios de mayoría relativa y de representación proporcional, mediante el sistema de listas votadas en una circunscripción plurinominal, en los términos que señalen esta Constitución y el Estatuto de Gobierno.

El Jefe de Gobierno del Distrito Federal tendrá a su cargo el Ejecutivo y la administración pública en la entidad y recaerá en una sola persona, elegida por votación universal, libre, directa y secreta.

El Tribunal Superior de Justicia y el Consejo de la Judicatura, con los demás órganos que establezca el Estatuto de Gobierno, ejercerán la función judicial del fuero común en el Distrito Federal.

La distribución de competencias entre los Poderes de la Unión y las autoridades locales del Distrito Federal se sujetará a las siguientes disposiciones: