IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANUTA WOZNIAK, Individually and as special Administrator of the ESTATE of JAN WOZNIAK, deceased | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 CV 1361 |
| vs. | ) ) ) | Judge Lefkow<br>Magistrate Judge Denlow |
| WYNDHAM HOTELS AND RESORTS, LLC, a foreign corporation, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
BASED ON *FORUM NON-CONVENIENS***

A review of the facts of this case and the applicable case law make it clear that the most appropriate forum for this litigation is Quintana Roo, Mexico. This is because (1) Quintana Roo, Mexico is an available adequate alternative forum for this litigation and (2) the public and private interest factors strongly favor Quintana Roo, Mexico. Therefore, the convenience of the parties and the ends of justice are best served by dismissing this action.

Plaintiff incorrectly argues that Quintana Roo, Mexico does not provide an adequate forum. Plaintiff fails to recognize that the fact that she does not have the same remedies or causes of action is immaterial to the analysis of what constitutes an adequate forum. The testimony of Emilio Gonzalez de Castilla del Valle, Defendant's Mexican law expert, is incontrovertible and establishes that Quintana Roo, Mexico is an adequate forum.

Additionally, Plaintiff is unable to effectively argue that the balancing of the private and public interest factors weigh in her favor. These factors weigh in favor of dismissal of this action.

517893.1

A.  **PLAINTIFF'S ARGUMENTS REGARDING THE INADEQUACY OF QUINTANA ROO, MEXICO AS A FORUM DO NOT WITHSTAND SCRUTINY**

Plaintiff does not dispute the availability of Mexico as an alternative forum but argues that the Mexican state of Quintana Roo is an inadequate forum. These arguments do not stand up to scrutiny as they are counter to controlling case law.

Plaintiff's first argument against the adequacy of Quintana Roo, Mexico as an alternative forum is based on the fact that Mexican law does not recognize the theory of apparent agency. Plaintiff argues that because apparent agency is the theory for her claims against Defendant, then she would not be able to pursue her case on that theory in the Mexican courts. Plaintiff's argument misses the point. Even if the case were to remain with this court, Mexican law would have to be applied and further, prevailing case law on the issue is consistent that a potential forum's failure to recognize a legal theory does not render it inadequate.

This explicit principle is stated in *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). *Piper* involved several Scottish citizens who brought wrongful death lawsuits in the United States against American manufacturers as a result of a plane crash in Scotland. *Id.* at 238. One of the theories pursued by the Plaintiff was strict liability in tort. *Id.* The court explained that "Scottish law does not recognize strict liability in tort." *Id.* Despite this fact the court held that Scotland was an adequate forum noting that "although the relatives of the decedent may not be able to rely on strict liability theory, and although their potential damage award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly." *Id* at 255. This principle has been followed by courts since *Piper*. *See also Gonzales v. Chrysler Corp.,* 301 F.3d 377 (5th Cir.2002) and *Macedo v. Boeing,* 693 F.2d 683, 687-88 (7th Cir.1982).

This case presents a similar situation.  Plaintiff is pursuing wrongful death claims against Defendant by attempting to use a theory of apparent agency.  Plaintiff asserts that Mexican courts do not recognize the theory of apparent agency.  However, there are theories by which Plaintiff can pursue Defendant in the Mexican court system as testified to by Emilio Gonzalez de Castilla del Valle, for negligence by responsible parties that may have caused Decedent's death.  (*See* Affidavit of Emilio Gonzalez de Castilla del Valle with attachments attached to Defendant's Memorandum of Law p. 2 and Mr. Castilla's deposition transcript attached to Plaintiff's response as Exhibit 2, p. 34)  It is undisputed that Mexican courts recognize claims for wrongful death and provide remedies for it including moral damages.  (*Id.*).  Moral damages would be analogous to loss of consortium available under Illinois law.  The theory of apparent agency in this case is analogous to the strict liability theory in the *Piper* case.  Since the unavailability of strict liability as a theory did not preclude the Scottish courts as being adequate in *Piper*, it is reasonable and logical that the unavailability of apparent agency as a theory does not preclude the Mexican courts from being adequate in this case.

Because Plaintiff states that her entire case is based solely on apparent agency theory, and because Mexican law does not recognize the theory, then her complaint will be dismissed even if the case remains in the Northern District of Illinois.  That is because Mexican law will apply to this case even if this court retains it.

Defendant cited in its Memorandum the case of *Townsend v. Sears Roebuck and Company*, 227 Ill. 2d 147,879 N.E.2d 893, (2007), which set forth the current test that Illinois courts use in analyzing choice of law questions -- the significant relationship test.  The court in *Townsend* concluded that "In the absence of unusual circumstances, the highest scorer on the 'most significant relationship' test is the place where the tort occurred.  For that is the place that

has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law." *Townsend*, at 227 Ill. 2d 147, 879 N.E.2d 893, 904, 316 Ill. Dec. 505, 516, citing *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844-845 (7th Cir.1999).

It is interesting the Illinois Supreme Court in 2007 looked to the *Spinozzi* case for supporting authority and cited it heavily. *Spinozzi* is a 7th Circuit case that is almost factually identical to the present case and is the best case in which to draw a parallel for the conflict of laws choice presently before this court. In *Spinozzi*, the plaintiff, an Illinois resident who booked his travel in Illinois, went on vacation to Acapulco, Mexico; while in Mexico he was injured when he fell into the maintenance pit at the hotel were he was a guest. *Id.* at 843. He and his wife brought suit in a federal district court in Illinois against the Mexican corporation that owned the hotel and three affiliates of that corporation. *Id.* at 843-4. The suit alleged negligence and it was dismissed on summary judgment. *Id.* at 844. The district judge held that under Illinois conflict of laws principles, Mexican law governed the substantive issues. The 7th Circuit affirmed. *Id.* at 849.

The *Spinnozi* court used a very clever metaphor to describe why foreign travelers from the United States should not have the expectation that U.S. tort law travels with them:

> "We doubt that Dr. Spinozzi would have thought he was carrying his domiciliary law with him, like a turtle's house, to every foreign country he visited. To change the zoological metaphor, he would not, eating dinner with a Mexican in Acapulco, feel himself cocooned in Illinois law, like citizens of imperial states in the era of colonialism who were granted extraterritorial privileges in weak or dependent states. Law is largely territorial, and people have at least a vague intuition of this. They may feel safer in foreign hotels owned by American chains, but they do not feel that they are on American soil and governed by American law." Id at 846.

4

517893.1

Since Mexican law will be applied here or in Mexico, Plaintiff's complaint cannot survive as she has admitted in her response.

Plaintiff's second argument against the adequacy of the Mexican courts is that the potential damages available in Mexico are likely to be less than Plaintiff could expect to recover in the Northern District of Illinois. Plaintiff again misses the point with this argument as the amount of damages has no bearing on the analysis articulated in the controlling case law.

For purposes of the analysis of whether a forum is adequate, "adequate" does not mean "equivalent." As long as the remedy provides some relief, even if the potential damage award may be smaller, the remedy is adequate for purposes of the forum *non-conveniens* doctrine. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

That is clearly the case here. The Plaintiff's causes of action are wrongful death, survival, and loss of consortium. If Plaintiff were to prevail on her liability theories under Mexican law, she would be entitled to damages based on the following elements: any and all medical and funeral expenses, the equivalent of 800 days of the victim's known wage at the time of death (if the victim has variable income or had no income the indemnification would be the equivalent of eight hundred days of the minimum daily wage in the economic zone payable to the spouse or to the legitimate heirs), and "moral damages" akin to loss of consortium. There would be no recovery for the survival action. (*See* Affidavit of Emilio Gonzalez de Castilla del Valle with attachments attached to Defendant's Memorandum of Law p. 2) Whether Plaintiff feels that her total potential recovery would not warrant a suit in Mexico is a decision that Plaintiff needs to make, and has no bearing on the legal analysis of adequacy.

The controlling case law makes very clear that a foreign forum is adequate "when it provides the plaintiff with some potential avenue for redress…even though they may not enjoy

the same benefits as they might receive in an American court." *Kamel v. Hill-Rom,* 108 F.3d 799, 803; (*citing Piper,* 454 U.S. at 255). As such, the Mexican court system, as it has been found by courts time and again, offers an adequate forum for the Plaintiff in this case.

**B.     THE PRIVATE INTEREST FACTORS OVERWHELMINGLY WEIGH IN FAVOR OF A MEXICAN FORUM**

The second step in the *forum non conveniens* analysis consists of balancing the private and public interest factors. Plaintiff argues in her response brief that these factors weigh in her favor; however, Plaintiff fails to focus on the central reality in this case: that it is a very straight forward premises liability case in which *all* the alleged events occurred at a resort in Mexico.

Plaintiff first argues that a plaintiff's choice of forum is to be given deference and cites a variety of cases to support that proposition. This is correct. Plaintiff, however, fails to explain that this deference to plaintiff's choice of forum can be overcome when the balance of the private and public interests is strongly in defendant's favor. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 (1947). Some courts have held that the deference given a plaintiff's choice of home forum is reduced when the operative facts giving rise to the action occur outside of the forum. See *Colantonio v. Hilton Int'l Co.*, No. 03-1833, 2004 U.S. Dist. LEXIS 15991 at 9-10.

As articulated in *Gulf*, the private interest factors for the court to consider in making its determination include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and the costs of obtaining attendance for willing witnesses; (3) the possibility of viewing the premises; and (4) all other practical problems that make a trial of a case easy, efficient and economical. *Id.* at 508, 67 S.Ct. at 843.

   **1.     The Relative Ease of Access to Sources of Proof**

The Wyndham Cozumel Resort is located in the City of Cozumel within the State of Quintana Roo, Mexico. That is were the Decedent's slip and fall took place. The property is

517893.1

owned, operated, managed, and maintained by Islander Properties, a Mexican entity. Any investigation into this matter would have been undertaken by Islander Properties and the local authorities of Cozumel, Quintana Roo, including an autopsy or inquest. Any documentation relative to the incident is located there. Also located in Cozumel, Quintana Roo, Mexico, would be any third party service providers or contractors who were retained by Islander Properties to perform maintenance or construction on the property. Documentation that these entities possess will be crucial to determining liability in this premises case. This documentation would include contracts, invoices, receipts, service logs, plans, drawings, schematics, and employee schedules.

Plaintiff makes absolutely no substantive argument concerning this factor of the analysis. Only in passing does she contend that Defendant's are unaware of any governmental investigation of the incident. This is true, however, because a death certificate was issued, it stands to clear, logical reasoning that some governmental agency investigated both the incident at the hotel and Decedent's subsequent medical care. Governmental agency documents are not the only documents located in Mexico. All of the sources of proof listed previously (both in this reply and Defendant's Memorandum of Law) are pivotal to the determination of liability in this matter and Plaintiff makes absolutely no argument to the contrary.

2. **The Availability of Compulsory Process for the Attendance of Unwilling Witnesses, and the Costs of Obtaining Attendance for Willing Witnesses**

Despite Plaintiff's assertions to the contrary, the bulk of witnesses necessary to determine liability in this premises case will be located in Mexico. It is true that there are potential witnesses from Illinois, but there are likely potential witnesses from all over the world who were in the lobby at the Wyndham Cozumel on that date. Plaintiff makes the broad assumption in her brief (and attached affidavit, Exhibit 1 attached to Plaintiff's response) that Illinois residents who were at the resort witnessed the incident (these "witnesses" are not identified by name). While it

7

is possible that an Illinois resident did witness the incident, it is highly unlikely that every Illinois resident alluded to by the Plaintiff was in the lobby at the exact same time that Decedent was walking into the lobby from the pool as alleged in Plaintiff's complaint. Even if they did, it still would not weigh in Plaintiff's favor. As Defendant has argued in its Memorandum, liability is the central issue in this case and the material liability witnesses are located in Mexico.

When weighing the convenience of the witnesses in a motion to dismiss for *forum non conveniens*, courts must consider the **materiality**, **nature** and **quality** of each witness, not merely the number of witnesses in each locale. *Hanley v. Omarc, Inc.*, 6 F.Supp.2d 770, 775 (N.D. Ill 1998).

With respect to the present case, Plaintiff alleges that Defendant was careless or negligent because of the following acts or omissions:

a. failed to properly maintain the lobby in a safe condition; *See* Complaint at Paragraph 22;

b. failed to have sidewalls to the stairwell which were of a safe height, thereby causing a hazardous condition for the patrons and others lawfully on the premises, including Plaintiff-decedent; *See* Complaint at Paragraph 22;

c. failed to exercise ordinary care to keep and maintain the premises in a proper and safe condition; *See* Complaint at Paragraph 22;

d. failed to inspect the premises, thereby failing to keep the premises in a safe condition; *See* Complaint at Paragraph 22;

e. failed to warn Plaintiff of the dangerous condition existing on the premises; *See* Complaint at Paragraph 22;

f. was otherwise negligent and/or careless in the maintenance and operation of the premises. *See* Complaint at Paragraph 22;

Each of these allegations of negligence stem from the operation, maintenance, and control of the premises. It is undisputed that the resort's owner, Islander Properties, operates, maintains, and controls the premises. Thus, it is reasonable that the only witnesses who will

offer any proof in determining liability in this case are those witnesses associated with the operation, maintenance, and control of the premises where the incident occurred. Those witnesses will be the employees of not only Islander Properties, but any other third-party engaged by Islander Properties to assist in the operation, maintenance, and control of the property. It would not be reckless to assume these individuals are Mexican citizens who would not be subject to compulsory process in the United States. Fed. R. Civ. P. 45.

Plaintiff additionally argues that it will be necessary to depose Decedent's doctors who treated him in Illinois for conditions not even remotely related to this incident so that they can establish his life expectancy. These depositions are wholly irrelevant to the case and not necessary to establish liability or damages. That is because in any action based in Mexico or with the application of Mexican law, the statutory provisions as set forth in the declaration of Defendant's Mexican law expert clearly states that the damages available to Plaintiff will be based on the various elements set forth by Mexican law (Affidavit of Emilio Gonzalez de Castilla del Valle with attachments attached to Defendant's Memorandum of Law p. 2). Those elements do not hinge in any way on life expectancy.

The physicians pertinent to this case are located in Mexico. The doctors at the Cozumel Medical Center who treated Decedent prior to his death, along with other treating medical personnel such as the ambulance drivers who treated Decedent at the resort, will all have to be deposed. It is again not reckless to assume these are Mexican citizens who will not be subject to compulsory process in the United States.

Plaintiff suggests that if the action were to remain in the United States, then foreign witnesses such as these Mexican medical witnesses could have their testimony obtained in some other fashion such as a deposition. They argue that courts have pointed to common modes of

communication and travel which reduce the time and expense of obtaining testimony. This is an argument that logically must work both ways. If the case is dismissed and brought in the appropriate forum in Mexico, then the Illinois witnesses, who are not even material to liability, can also provide testimony in a similar fashion. This argument in no way affects the weight of this factor.

Plaintiff also contends that various witnesses who were involved in assisting the Plaintiff book her vacation will have to be deposed or testify in this case. That is not true based on Plaintiff's own admission that Mexico does not recognize the apparent agency theory under which Plaintiff brings her case. Since Mexican law will apply in any event then it will not be necessary to attempt to establish apparent agency through witnesses such as a travel agent; whether they are Illinois residents or not, these witnesses are not relevant to the case.

Plaintiff argues that Defendant's failure to name specific Mexican witnesses should be considered by the court as a reason to reject Defendant's motion. This argument is not consistent with controlling case law on this issue. The Supreme Court has held that a defendant moving for dismissal on *forum non conveniens* "must provide enough information to enable the District Court to balance the parties' interests" although it need not submit overly detailed affidavits to carry its burden. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235 at 258 (1981). Defendant attached to its Memorandum in support of its motion to dismiss the affidavit of Valerie Capers Workman who stated that Defendant has no ownership interest in the property at Cozumel and that it had no involvement in the management, control, or operation of the property. (See affidavit of Valerie Capers Workman). Islander Properties has employees who manage, maintain, and control the premises. Islander Properties likely would outsource those duties to

third-party agents where appropriate. Information provided by Defendant by way of affidavit, declaration, and depositions given to date in this case more than satisfy the *Piper* requirements.

Plaintiff argues that the franchise agreement between Defendant and Islander Properties allows Defendant to compel the attendance of Islander Properties' employees at meetings. This argument drastically misrepresents the franchise agreement and should therefore be disregarded.

A thoughtful view of Section B, paragraphs 1-3 of the franchise agreement reveals that this section of the agreement concerns attendance of certain Islander Properties employees at certain business meetings. It is not a "catch-all" contract provision that somehow magically converts all employees of Islander Properties into employees of Defendant. It does not confer upon Defendant subpoena power and it certainly does not give Defendant the ability to compel Mexican citizens to travel to the United States for court proceedings. This distortion of the agreement should not be weighted for Plaintiff in analyzing this factor.

### 3. The Possibility of Viewing the Premises

This factor is also weighted in favor of the Defendant in this case. To litigate this case in Illinois would also foreclose any possible viewing of the scene of the accident. Plaintiff's attorney contends that in his years of practice he has never been allowed a site visit during a trial. That is not relevant to the argument as Plaintiff does not have experience as a practitioner in Mexico. He cannot say whether or not a Mexican judge might allow such a visit if this action is dismissed and re-filed there. In any event an Illinois forum would completely foreclose the possibility. To further refute Plaintiff, it should be pointed out that it is not only the jury's ability to view the premises that weighs in favor of Quintana Roo, Mexico as the proper forum; it is also the fact that retained expert witnesses with knowledge of Mexican building codes would not

11

have easy access to the premises.  Great expense and unreasonable delays would be incurred if the parties' experts needed a viewing of the premises to arrive at their opinions.

>    **4.    All Other Practical Problems that Make a Trial of a Case Easy, Efficient and Economical.**

This factor is one of most the important.  If the case is not dismissed and pursued in the Mexican forum, then the owner of the property and those potentially responsible for the events involved in this case may not be held accountable.  Defendant most likely will not be able to implead Islander Properties and its potential third-party agents whom it contracted with to operate, manage, maintain, and control the premises in the United States, despite Plaintiff's assertions to the contrary.  Even if it did, keeping the case in Illinois would likely force several Mexican entities to litigate a case which occurred on their home soil in Illinois.

Plaintiff argues that its internet search reveals that Islander Properties may have some offices in U.S. cities (none, however, appear to be in Cook County Illinois).  But the proof is in the pleadings.  If the Plaintiff was certain that Islander Properties was subject to jurisdiction in an American court, specifically Illinois, then she would have sued it in the first place.  Plaintiff has known all along (and even pleads in her complaint) that Islander Properties owns the property were Decedent allegedly fell.  Yet they did not sue it.  That is because she knows that Islander Properties is most likely not subject to jurisdiction and therefore declined to go through with costly litigation on the issue.

As Defendant argued in its Memorandum of law, the ability to implead potentially liable third parties is extremely important in the analysis of any motion to dismiss based on *forum non-conveniens*.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. at 258 (1981).  Illinois courts point to this factor in evaluating these motions.  An examination of *Vlasic v. Wyndham International, Inc. et. al.,* 451 F. Supp. 2d 1005 (Cent. Dist. Illinois 2006), is on point for the analysis of the current

case. The plaintiff's decedent in *Vlasic* was an Illinois citizen who spent time at one of defendant's resorts in Aruba. *Id.* While at the resort, decedent sat in a deck chair near the pool when a palm tree fell over severely injuring the decedent. He died later that day as a result of the injuries. *Id.* Defendant filed a motion to dismiss based on *fourm non conveniens*. *Id.* The court engaged in a very thoughtful balance of private and pubic interest factors and concluded that the Central District of Illinois was not the most convenient forum for the litigation. *Id.* at 1012. The court stated that judicial economy favors the resolution of all claims in one trial:

> "[L]itigating all claims in Aruba avoids a scenario in which Defendants would pursue their claims for contribution against the landscaping company in Aruba while defending the action against plaintiff in the United States, without compulsory process to obtain key witnesses." *See Morse v. Sun In'l Hotels,* 2001 U.S. Dist. LEXIS 23488, 2001 WL 34874967 at *4 (S.D. Fla. Feb. 26, 2001). While Defendants, if found liable in this Court, may seek contribution from the landscaping company in Aruba, this approach runs the risk of inconsistent verdicts. *See Piper Aircraft,* 454 U.S. at 243. In the interests of judicial economy, this factor leans toward dismissal. *See Iragorri,* 203 F.3d at 15 (inability to implead favors dismissal); *Fitzgerald v. Texaco,* 521 F.2d 448, 453 (2d Cir. 1975) ("The inability to implead other parties directly involved in the controversy is a factor which weighs against the retention of jurisdiction . . . .); *Kristoff v. Otis Elevator Co.,* 1997 U.S. Dist. LEXIS 1591, 1997 WL 67797, at *3 (E.D. Pa. Feb. 14, 1997) (dismissing Pennsylvania resident's action against Bahamian company based in part on the inability to implead third parties)." *Id.* at 1010-1011.

That is exactly the scenario of the present case. If this action is not dismissed then Defendant will have to litigate against the Plaintiff in the Northern District of Illinois and likely be forced to pursue Islander Properties and other potential negligent actors in a separate action for indemnification or contribution in Mexico.

Even if Defendant was able to implead Islander Properties it would force Islander to litigate in the Northern District of Illinois. This is not in the interest of judicial economy. Further, Islander may have potential third-party agents whom it contracted with and those are most likely Mexican entities that would not be subject to American jurisdiction.

## C. THE PUBLIC INTEREST FACTORS OVERWHELMINGLY WEIGH IN FAVOR OF A MEXICAN FORUM

Defendant has set forth strong arguments as to why the public interest factors set forth in *Gulf Oil Corp. V. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 (1947), weigh in its favor. The public factors to consider include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*, at 509, 67 S.Ct., at 843.

In her response brief, Plaintiff does not refute any of the public interest policy arguments established by Defendant; she only makes arguments regarding choice of law principles. The choices of law arguments set forth by Defendant in its Memorandum of law and earlier in this reply clearly demonstrate that Mexican law will apply in this case. Given that fact, the case should be dismissed so that a Mexican judge can apply Mexican law.

Plaintiff relies on *Esser v. McIntyre,* 169 Ill.2d 292 (1996), to support her arguments as to why Illinois law will apply to this case. This reliance is misplaced, *Esser* is clearly distinguishable and the *Spinnozi* case controls.

The plaintiff in *Esser* was a last minute guest of defendant, who, along with several other Illinois residents booked a villa in Acapulco, Mexico. *Id.* at 295. Plaintiff slipped and fell in the kitchen of the villa on un-popped popcorn kernels which had been left on the floor by one of the other guests. *Id.* at 295-296. The actual owner and operator, Villa Vera Hotel, was not a party to the lawsuit. *Id.* at 298. The court found that Illinois rather than Mexico had the more significant relationship. *Id.* at 301.

This case is clearly distinguishable from the present case. Plaintiff in *Esser* did not make premises liability claims against an entity, foreign or otherwise, charged or allegedly charged with ownership, control, or maintenance of the premises. Instead, she sued an individual under common law negligence whom she alleged left popcorn kernels on the floor. *Id.* at 302. This bizarre case bears no resemblance to the present case; *Spinozzi*, is the applicable case.

**D.   CONCLUSION**

The convenience of the parties and the witnesses to this case strongly favors a Mexican forum. Quintana Roo, Mexico provides an available and adequate forum for the resolution of Plaintiff's claims. Mexican law will apply to this case regardless of the location of the trial. Weighing of the private and public factors considered under an analysis of *forum non conveniens,* clearly is in favor of Defendant and establishes that Quintana Roo, Mexico is the prevailing jurisdiction. For the reasons stated herein and in Defendant's Motion to Dismiss, and Memorandum of Law, a dismissal of this case is warranted.

                          Respectfully Submitted,

                          **WYNDHAM HOTELS AND RESORTS, LLC**

                          By:    /s/ *Christopher M. Dely*

David M. Holmes
Christopher M. Dely
Wilson, Elser, Moskowitz,
   Edelman & Dicker
120 N. LaSalle Street, Suite 2600
Chicago, IL 60602
 Telephone:   (312) 704-0550
 Facsimile:   (312) 704-1522
E-mail: christopher.dely@wilsonelser.com

15

517893.1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September, 2008, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operations of the Court's electronic filing systems to all parties indicated on the electronic filing receipt. All other parties will be served by Regular U. S. Mail. Parties may access this filing through the Court's System.

*/s/ Christopher M. Dely*
Christopher M. Dely

517893.1