**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DANUTA WOZNIAK, individually and** | ) | |
| **as Special Administrator of the ESTATE** | ) | |
| **of JAN WOZNIAK, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08 CV 1361** |
| **v.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **WYNDHAM HOTELS AND RESORTS,** | ) | |
| **LLC, a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Danuta Wozniak ("Wozniak"), individually and on behalf of the estate of her

deceased husband, Jan Wozniak, filed a three-count complaint against defendant Wyndham

Hotels and Resorts, LLC ("WHR") asserting claims for survival, wrongful death, and loss of

consortium in connection with Jan Wozniak's death after a slip-and-fall accident on the premises

of the Wyndham CZM Resort & Spa Caribbean Rm ("Wyndham CZM") located in Cozumel,

Quintana Roo, Mexico. Before the court is WHR's motion to dismiss under the doctrine of

*forum non conveniens*. For the reasons set forth below, WHR's motion [#10] is granted.

**JURISDICTION**

On January 25, 2008, Wozniak filed this action against WHR in the Circuit Court of

Cook County, Illinois. On March 6, 2008, WHR removed the case to this court pursuant to

28 U.S.C. §§ 1441 and 1332. Jurisdiction is proper under § 1332 as the plaintiff is a citizen of a

different state from the defendant and WHR has a good faith basis to assert that the amount in

controversy exceeds $75,000, based on Wozniak's claim that damages exceed the state court

jurisdictional threshold of $50,000 and the fact that this case involves a wrongful death claim.

Jan and Danuta Wozniak, residents of Morton Grove, Illinois, booked a vacation at

Wyndham CZM from October 10, 2007 through October 17, 2007. They purchased the vacation

from a travel agency, American Travel Abroad, Inc., located in Chicago, Illinois. The trip was

organized and run by a tour company, Apple Vacations, an Illinois corporation. According to

the complaint, the Wozniaks chose to stay at Wyndham CZM because of their trust in WHR's

reputation, and Wyndham CZM was marketed to them as being owned and operated by WHR.

While walking in the Wyndham CZM lobby on October 17, 2007, Jan Wozniak slipped

and fell over the side of a stairwell. Mr. Wozniak died later that day from injuries sustained

from the fall.

Wyndham CZM is owned and operated by Islander Properties S.A. de C.V. ("Islander"),

a Mexican corporation. Islander is a franchisee of WHR. Defendant asserts (via affidavit), and

plaintiff does not dispute, that (1) WHR has no ownership interest in Wyndham CZM; (2) WHR

has never operated, managed, controlled, or occupied Wyndham CZM; (3) WHR has never been

involved in the day-to-day operations, direction, or management of Wyndham CZM; and (4) no

WHR employees work at Wyndham CZM.

Wozniak alleges that, at all times relevant, Islander was acting as an apparent agent of

WHR. Wozniak contends that as a result of this alleged agency relationship, WHR owed

---

[1] For purposes of this motion to dismiss, the court accepts all well-pleaded allegations in the compliant as true and draws all reasonable inferences in favor of the plaintiff. *See Travel All Over the World, Inc.* v. *Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir. 1996).

Wozniak and her decedent a duty of reasonable care to maintain Wyndham CZM in a reasonably safe condition. All three of Wozniak's claims against Wyndham are based on this apparent agency theory.

**DISCUSSION**

The court may dismiss a case under the doctrine of *forum non conveniens* when it "best serves the convenience of the parties and the ends of justice." *Kamel* v. *Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997) (citing *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)). The *forum non conveniens* inquiry is guided by several considerations. First, an adequate forum must be available to hear the case. *Id.* at 802. If this threshold criterion is satisfied, the court must then balance the private interests of the litigants and the public interests of the forum to determine the superior venue. *Id.* at 803. Dismissal is proper if "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 256–57 n.23, 102 S. Ct. 252, 70 L. Ed. 419 (1981). The defendants bear the burden of persuading the court that a suit should be dismissed under the doctrine of *forum non conveniens*. *In re Ford Motor Co.*, 344 F.3d 648, 652 (7th Cir. 2002).

I.      **Availability and Adequacy of Mexico as an Alternative Forum**

In determining whether an adequate alternative forum is available, the court must consider both (1) the availability and (2) the adequacy of the alternative forum. An alternative forum is available if "all parties are amenable to process and are within the forum's jurisdiction." *Kamel*, 108 F.3d at 803. An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly." *Id.* (citing *Piper*, 454 U.S. at 255).

Defendant asserts that Mexico is an available alternative forum because WHR has agreed to submit to the jurisdiction of the Mexican courts for this case. A defendant's "amenab[ility] to process in the other jurisdiction" is ordinarily sufficient to establish the availability of the alternative forum. *Macedo* v. *Boeing Co.*, 693 F.2d 683, 687 (7th Cir. 1982) (internal quotation marks omitted). Wozniak does not dispute the availability of Mexico as an alternative forum.

Defendant argues that Mexico is an adequate alternative forum because, as Wozniak concedes, Mexican law recognizes wrongful death claims. "A court may dismiss on *forum non conveniens* grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress." *Kamel*, 108 F.3d at 803 (citing *Ceramic Corp. of America* v. *Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993)). According to WHR's expert, the Mexican law applicable to this case, the Quintana Roo Civil Code, allows civil liability claims for wrongful death by the surviving spouse and legitimate heirs of the decedent.

Wozniak nevertheless insists that Mexico would be an inadequate forum because the applicable Mexican law (1) caps the award on Wozniak's claim at about $4000 (because recovery is based on the decedent's income at time of death and Wozniak was on disability at the time of the accident); (2) does not recognize apparent agency in wrongful death cases; (3) does not recognize pain and suffering; (4) does not recognize loss of consortium claims; and (5) does not allow recovery by financially independent children in wrongful death claims.

Wozniak's arguments are unavailing. As the Supreme Court clarified in *Piper Aircraft Co.* v. *Reyno*, the fact that substantive law in the alternative forum may be less favorable to the plaintiff carries limited weight in a *forum non conveniens* analysis. 454 U.S. at 247–55. It is not

the place of a United States court to render judgments on another nation's tort policy. *See Spinozzi* v. *ITT Sheraton Corp.*, 174 F.3d 842, 847 (7th Cir. 1999) (noting the danger of "provincialism: an inability to recognize that a different jurisdiction (especially a foreign country) need not be benighted to have a different approach to a particular legal problem"); *Gonzalez* v. *Chrysler Corp.*, 301 F.3d 377, 382 (5th Cir. 2002) ("[T]he Mexican people, through their duly-elected lawmakers, have decided to limit tort damages with respect to a child's death. It would be inappropriate—even patronizing—for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims."). That Wozniak may find the amount of potential recovery in a Mexican court unsatisfactory does not render Mexico an inadequate forum, as it might be if it deprived him of any remedy or treated him unfairly. *See Piper*, 454 U.S. at 255 ("Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly."); *Gonzalez*, 301 F.3d at 383 (whether it is economically viable for the plaintiff to file suit in the alternative forum is not a significant factor in the adequacy inquiry).

Wozniak argues that because all of her claims against WHR are based on a theory of apparent agency and Mexico does not recognize this legal theory, this case cannot be litigated in Mexico. While Wozniak might not be able to hold WHR liable in Mexico, however, Wozniak could still potentially obtain redress for the wrongful death of her husband from Islander, the actual owner of the premises. In other words, even if Mexican law precludes Wozniak from bringing claims against the present defendant and limits her potential damages, it does not bar all potential avenues of redress. *See Piper*, 454 U.S. at 255 (the absence of certain legal theories

5

and the probability of smaller damages does not render an alternative forum inadequate); *see also Kamel*, 108 F.3d at 803 (finding an alternative forum adequate because it recognized plaintiff's breach of contract claim, even though it did not recognize his fraud and tort claims).

The court thus finds that Mexico is an available and adequate alternative forum.

## II.    Balancing of Public and Private Interest Factors

Having found that Mexico is an available and adequate alternative forum, the court must balance the public and private interest factors.  *Gulf Oil*, 330 U.S. at 508; *Kamel*, 108 F.3d at 803.

### A.    The Private Interest Factors

The private interest factors include (1) "the relative ease of access to sources of proof," (2) the "availability of compulsory process for the attendance of unwilling witnesses" and "the cost of obtaining the attendance of willing witnesses," (3) "the possibility of viewing the premises, if necessary," and (4) "all other practical problems that make trial of a case easy, efficient and economical."  *Kamel*, 108 F.3d at 803 (citing *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)).  The court considers each of these factors in turn.

#### 1.    The Relative Ease of Access to Proof

With respect to the first factor, access to proof weighs heavily in favor a Mexican forum. This is fundamentally a premises liability case.  The accident occurred in Mexico, and the premises in question are located in Mexico.  Islander Properties, which owns and operates Wyndham CZM, is located in Mexico.  WHR argues that all relevant documentation of the accident is in the possession of Islander Properties and the local authorities of Cozumel who

presumably responded to and investigated the incident, as well as the healthcare institutions and

local physicians who treated the decedent in the hours prior to his death. In addition,

documentation relating to the construction and maintenance of the property, which are likely

central to determining premises liability, are located in Mexico.[2] WHR argues that all of the

aforementioned documents are likely in Spanish and will have to be translated if trial takes place

in the United States. WHR also suggests that relevant documents may be in the possession of

third-party service providers and contractors retained by Islander to perform construction and

maintenance on the property.

Wozniak counters that certain key documents such as the "Report of Death of An

American Citizen Abroad" filed with the United States Consulate and medical records from

Mexico are already available and written in English. Wozniak also contends that it is merely

speculative that local authorities conducted any investigation or created any records relating to

the incident. Wozniak does not assert, however, that any relevant documentation or physical

evidence is located in Illinois.

---

[2] In the complaint, plaintiff seeks to hold WHR liable for, among other things,

> (a) fail[ing] to properly maintain the lobby in a safe condition;
> (b) fail[ing] to have sidewalls to the stairwell which were of a safe height, thereby causing a hazardous condition for the patrons and others lawfully on the Premises, including Plaintiff-decedent;
> (c) fail[ing] to exercise ordinary care to keep and maintain the Premises in a proper and safe condition;
> (d) fail[ing] to inspect the Premises, thereby failing to keep the Premises in a safe condition; [and]
> (e) fail[ing] to warn Plaintiff of the dangerous condition existing on the Premises . . . .

Compl. at 3.

Because the vast majority of relevant documents and physical evidence in this case are located in Mexico, this factor weighs in favor of a Mexican forum.

> ## 2. The Availability of Compulsory Process for Compelling the Attendance of Unwilling Witnesses and the Cost of Obtaining Attendance of Willing Witnesses

The second factor, which considers the relative availability of process for compelling the attendance of unwilling witnesses and the costs associated with obtaining the attendance of willing witnesses, also favors a Mexican forum. In making this determination, the court considers not only the number of witnesses in each forum but the quality and nature of their expected testimony. *Law Bulletin Publishing, Co.* v. *LRP Publications, Inc.*, 992 F. Supp. 1014, 1018 (N.D. Ill. 1998).

WHR argues that the vast majority of witnesses necessary to determine liability in this case, including doctors, investigators, and hotel personnel, are located in Mexico, outside the jurisdiction of Illinois courts. WHR also contends that Islander, the owner and operator of Wyndham CZM, is a Mexican corporation not subject to the jurisdiction of this court. WHR asserts that Islander employees and contractors will likely be the key witnesses at trial because they are the ones who have knowledge of the operations, maintenance, and control of the premises. WHR also contends that the experts who would testify regarding Mexican building codes are located in Mexico. WHR does not believe that any of these Mexican witnesses are amenable to service by an Illinois court or willing to travel to Illinois to testify.

Wozniak counters that under the franchise agreement between WHR and Islander, WHR has the right to compel Islander employees to attend meetings in the United States. Therefore, Wozniak argues, Islander employees should be considered witnesses under WHR's control.

Having reviewed the relevant provision of the Franchise Agreement,[3] however, the court is not persuaded that WHR's contractual right to compel Islander employees to attend certain business meetings is, in any meaningful sense, comparable to the right to compel WHR employees to testify in the United States.

Wozniak asserts that at the time of the accident, she and her husband were traveling with a group of Illinois residents. These Illinois residents, Wozniak contends, are the only known occurrence and post-occurrence witnesses of the accident, and none would be subject to a Mexican subpoena. Wozniak also suggests that other guests at the resort who may have witnessed the accident are most likely United States citizens and thus not subject to process in Mexico. In addition, Wozniak asserts that all of her witnesses regarding apparent agency (e.g., personnel from the travel agency, tour company, and WHR) are located in the United States and that the her husband's doctors, who would testify as to his life expectancy for purposes of determining damages, are located in Illinois.

In sum, the likely witnesses as to liability in this case are located predominantly in Mexico and not amenable to process in the United States, while witnesses concerning plaintiff's apparent agency theory and damages are located in Illinois and may not be willing to testify, or

---

[3] The relevant provision of the Franchise Agreement provides, "Franchisor may from time to time require certain personnel employed at the Hotel to attend periodic meetings held to address matters of general interest to the System (including, without limitation, annual sales and rooms meetings) and may require Franchisee to pay the attendance fee specified in the Manual or otherwise in writing. Such meetings shall be held at locations designated by Franchisor. Franchisee shall be responsible for the travel expenses, room, board and wages for its personnel attending any such meeting." Dkt. No. 24, at 54.

amenable to process, in Mexico. Neither party has identified by name, or specified the number

of, witnesses they intend to call, but they have shown that whether the trial is held here or in

Mexico, witness travel is likely to be expensive and burdensome on at least one of the parties.

Nevertheless, because determining liability is the central issue in this case,[4] this factor weighs in

favor of a Mexican forum.

### 3. The Possibility of Viewing Premises

WHR argues that the possibility of viewing of the premises by factfinders and experts

would be foreclosed by trial in Illinois. Wozniak counters that this factor is of little significance

because juries are rarely, if ever, allowed to go on field trips to view premises. Wozniak also

argues that based on WHR's franchise agreement with Islander, WHR is entitled to inspect

Wyndham CZM at its discretion. Thus, an Illinois forum would not prevent WHR from viewing

the premises, taking measurements, taking photographs, and having its experts inspect the

premises. On balance, this factor is neutral.

---

[4] Indeed, if Mexican substantive law is applied—which, for the reasons discussed below, appears to be extremely likely in any event—then, by plaintiff's own assertion, her apparent agency theory will not be available. *See* Pl.'s Resp. at 4 (asserting that "Mexican law, and specifically, the Civil Code of Quintana Roo does not recognize 'apparent agency' for wrongful death and personal injury cases").

### 4.      Other Practical Problems

Another private interest factor relevant to this case is the ability to implead potential

third-party defendants.  *Piper*, 454 U.S. at 259 (finding that "problems posed by the inability to

implead potential third-party defendants clearly supported holding the trial in Scotland").  WHR

argues that only a Mexican court would have jurisdiction over all the necessary parties to this

controversy, because Islander—the owner of the premises and the party most directly

responsible for the construction, maintenance, and operation of Wyndham CZM—is not

amenable to process in Illinois.  WHR asserts that if forced to litigate in Illinois, it will be unable

to implead Islander, which would be burdensome and unfair.

Wozniak argues that WHR has not met its burden of showing that WHR is unable to

implead Islander.  Wozniak further asserts that Islander maintains offices in Houston, Dallas,

New York, and San Diego, as well as a website accessible to citizens of Illinois.  According to

Wozniak, Islander is amenable to service in Illinois because it does business in the United States

and markets its hotels to residents in Illinois.  Wozniak's contention that Islander Properties is

amenable to process, however, is called into question by the fact that plaintiff has not served

Islander Properties—the most obvious defendant given the subject matter of this case—with

process.

While a defendant's inability to implead is not dispositive, the interests of judicial

economy and convenience favor resolving all claims in one trial.  *Piper*, 454 U.S. at 259; *Vlasic*

v. *Wyndham Int'l, Inc.*, 451 F. Supp. 2d 1005, 1010 (C.D. Ill. 2006).  Litigating in Mexico would

avoid a scenario in which WHR is forced to pursue claims in Mexico against Islander for

contribution while defending the present action in the United States. *Vlasic*, 451 F. Supp. 2d at 1010–11. The two trials would likely require much of the same proof, and litigating all claims in Mexico avoids the risk of inconsistent verdicts. *See id.* WHR's inability to implead Islander in Illinois thus weighs in favor of a Mexican forum.

## B. Public Interest Factors

The public interest factors include (1) "the administrative difficulties stemming from court congestion," (2) "the local interest in having localized disputes decided at home," (3) "the interest in having the trial of a diversity case in a forum that is at home with the laws that must govern the action," (4) "the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law," and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Kamel*, 108 F.3d at 803 (citing *Piper*, 454 U.S. at 241 n.6). Because the parties do not address the first and fifth factors, the court focuses its analysis on the remaining factors.

### 1. Local Interest in the Dispute

The second public interest factor considers the local interest in having localized disputes decided at home. WHR argues that Mexico has the stronger local interest in resolving this controversy because it involves the "claimed inadequacies and insufficiencies in a Mexican hotel which employed Mexican citizens, and was built and maintained in accordance, presumably, with Mexican regulations." Def.'s Mem. at 9. In response, Wozniak argues that Illinois has an interest in providing a judicial forum for its injured citizens.

While the court recognizes that Illinois has an interest in deciding a dispute involving injury to an Illinois citizen, the accident at the heart of this suit occurred in Mexico. As the

12

Seventh Circuit has explained, Illinois's interest in protecting its citizens does not extend to "cocoon[ing]" them in Illinois law wherever they go, "like citizens of imperial states in the era of colonialism who were granted extraterritorial privileges in weak or dependent states." *Spinozzi* v. *ITT Sheraton Corp.*, 174 F.3d 842, 846 (7th Cir. 1999). This factor thus weighs in favor of a Mexican forum.

### 2.      Choice of Law in Relation to the Home Forum

The third public interest factor considers "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." *Kamel*, 108 F. 3d at 803. Thus, the initial question in evaluating this factor is which forum's law will apply in this case. It is well established that "[a] federal court sitting in diversity applies the choice of law rules of the state in which it sits." *Fredrick* v. *Simmons Airlines, Inc.*, 144 F. 3d 500, 503 (7th Cir. 1998). Illinois applies the "most significant relationship test" to determine the applicable law in a tort case. *Id.* at 503–04. Under Illinois choice of law rules, "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Id.* at 504 (quoting *Esser* v. *McIntyre*, 661 N.E.2d 1138, 1141, 169 Ill. 2d 292, 214 Ill. Dec. 693 (1996)). In determining whether Illinois has the more significant relationship, the court examines the following factors: "(1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered. The Illinois courts also consider 'the interests and public policies of potentially concerned states . . . as they relate to the transaction in issue.'" *Id.* at 504 (quoting *Jones* v. *State Farm Mut. Auto. Ins. Co.*, 682 N.E.2d 238, 249, 289 Ill. App. 3d 903, 224

13

Ill. Dec. 677 (Ill. App. Ct. 1st Dist. 1997)). Thus, in this action, where the accident and resulting

injuries occurred entirely in Mexico, there is a strong presumption that Mexican law applies.

Wozniak attempts to overcome that presumption by arguing that (1) plaintiff and the

decedent are Illinois domiciliaries, (2) defendant WHR does business and markets its products in

Illinois, and (3) the relationship between the parties is centered in Illinois. In short, Wozniak

contends that because she and her husband were in Illinois when they booked their stay at

Wyndham CZM, their relationship with WHR is centered in Illinois. Wozniak relies principally

on *Esser* v. *McIntyre*, 661 N.E.2d 1138, 169 Ill. 2d 292, 214 Ill. Dec. 693 (1996), where the

plaintiff slipped on unpopped popcorn kernels spilled by the defendant while vacationing in

Acapulco, Mexico. *Id.* at 1140. In the course of its choice of law analysis, the Illinois Supreme

Court found that the relationship between the parties was centered in Illinois because (1) the

plaintiff was invited on the trip by the defendant's friend, an Illinois resident; (2) the defendant's

friend's invitation was issued in Illinois; and (3) defendant planned the trip from Illinois. *Id.* at

1142.

Wozniak's reliance on *Esser*, however, is unavailing. *Esser* concerned "a wholly private

dispute involving only Illinois residents." *Id.* As such, the court determined that applying

Illinois law would "not impinge upon Mexican interests since the case requires no involvement

by Mexican courts, Mexican defendants, or Mexican witnesses." *Id.* The court thus weighed the

significant relationship test in favor of Illinois. *Id.* The present case, despite Wozniak's failure

to join Islander as a defendant, inevitably involves foreign witnesses and foreign entities.

Applying Illinois law in this case would impinge on Mexico's interests in determining its own

tort policy, because the court would effectively be holding a Mexican hotel to Illinois's standard of care.[5] This is contrary to the principles underlying choice of law in tort suits. *Spinozzi*, 174 F.3d at 845 ("Illinois residents may want a higher standard of care than the average hotel guest in Mexico, but to supplant Mexican by Illinois tort law would disserve the general welfare because it would mean that Mexican safety standards (insofar as they are influenced by tort suits) were being set by people having little stake in those standards."). The mere fact that the Wozniaks booked their stay from Illinois is thus insufficient to overcome the presumption that the law of the place of injury, Mexico, governs this case.

Wozniak further argues that if Mexican law is applied to this case, she will not have a case because Mexican law does not recognize apparent agency in wrongful death cases. Under Illinois choice of law principles, however, this argument is beside the point. *See Carris* v. *Marriot Int'l, Inc*., 466 F.3d 558 (7th Cir. 2006) (affirming district court's decision, in case involving jet ski accident at Marriot-franchisee resort in the Bahamas, to apply Bahamian law over Illinois law even though Bahamian law did not recognize apparent authority as a ground for tort liability and thus precluded the plaintiff's claim against the defendant).

---

[5] As the Seventh Circuit suggested in *Spinozzi v. ITT Sheraton Corp.*, "it would be different" if WHR or Islander "had promised the [plaintiffs] a tort regime, in the event of an accident, that would be as favorable to them as Illinois tort law; or if it had induced them to stay at the [resort] by representations concerning safety that might have led them to believe they would have the same legal protection in Mexico as in Illinois." 174 F.3d at 846. Here, as in *Spinozzi*, however, "[n]o such representations are alleged." *Id.*

Because Mexican law governs this case, this factor weighs heavily in favor of dismissal.

### 3. Problems in the Application of Foreign Law

The fourth public interest factor is the interest in "the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law." *Kamel*, 108 F.3d at 803 (citing *Piper*, 454 U.S. at 241 n.6). Defendant argues that judicial economy favors a Mexican forum for this case because not only would a Mexican court be more familiar with the relevant Mexican laws, but it would also not require the translation of those laws from Spanish to English. Plaintiff does not dispute these assertions. The court finds that this factor weighs in favor of a Mexican forum. *See Rodriguez* v. *Orion Schiffahrts-Gesellschaft Reith & Co.*, 348 F. Supp. 777, 779 (S.D.N.Y. 1972) ("[W]ere the case to be retained here, testimony of experts on the foreign law applicable to the case would be required and their depositions would involve translations, with the hazard inherent in translations of foreign law, so that the trial 'may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact.'") (quoting *Conte* v. *Flota Mercante Del Estado*, 277 F.2d 664, 667 (2d Cir. 1960)).

### C. Deference to Plaintiff's Choice of Forum

The balance of the private and public interest factors strongly favors a Mexican forum. Nevertheless, the court recognizes that the plaintiff's choice of forum is afforded substantial deference, especially when the plaintiff chooses her home forum. *Kamel*, 108 F.3d at 803. Still, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum." *Piper*, 454 U.S. at 255–56 n.23.

In this case, Wozniak chose to bring suit in the Northern District of Illinois, her home forum. In addition, WHR is an American corporation. These facts generally weigh heavily in favor of denying a motion to dismiss based on *forum non conveniens*. The record reflects, however, that this is not an ordinary case where plaintiff and defendant are both citizens of the United States. Wozniak seeks to hold WHR liable under an apparent agency theory for the negligence of Islander, a Mexican third party, though plaintiff has neglected to join Islander, the alleged primary tortfeasor, as a defendant. Were Islander actually a party to this case, the *forum non conveniens* analysis would weigh even more strongly towards the Mexican forum.

Given the tenuous connection of this controversy to Illinois, litigating this case here would be unnecessarily burdensome for the defendant. The private and public interest factors so overwhelmingly favor dismissal that even in light of the great deference given to plaintiff's choice of forum, this action should be dismissed in favor of a Mexican court.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss under the doctrine of *forum non conveniens* [#10] is granted. The case is dismissed without prejudice to refiling in a Mexican forum.

Dated: March 31, 2009               Enter:_____
                                            JOAN HUMPHREY LEFKOW
                                            United States District Judge